CITY OF DALLAS, Appellant,

v.

Kenneth E. ALBERT, et al., Appellees.

City of Dallas, Appellant,

v.

David L. Barber, et al., Appellees.

City of Dallas, Appellant,

v.

Anthony Arredondo, et al., Appellees.

City of Dallas, Appellant,

v.

Kevin Michael Willis, et al., Appellees.

Nos. 05–03–01297–CV to
05–03–01300–CV.

Court of Appeals of Texas,
Dallas.

Dec. 21, 2006.

Rehearing Overruled Feb. 22, 2007.

Madeleine B. Johnson, City Attorney, James B. Pinson, Assistant City Attorney, Dallas, for appellant.

Bill Boyd, John R. Stooksberry, Boyd & Veigel, P.C., McKinney, for appellees.

Before Justices MORRIS, FITZGERALD, and FRANCIS.

## OPINION ON REHEARING

Opinion by Justice MORRIS.

We issued our original opinion in the above referenced cases on August 10, 2004. *See City of Dallas v. Kenneth E. Albert*, 140 S.W.3d 920 (Tex.App.-Dallas 2004, no pet.). In that opinion, we concluded the Texas Supreme Court's holding in *Reata Construction Corp. v. City of Dallas*, 47 Tex. Sup.Ct. J. 408, 2004 WL 726906 (Tex. Apr. 2, 2004) (per curiam) compelled us to decide that the City of Dallas had waived its sovereign immunity in these suits by filing counterclaims for affirmative relief. We therefore affirmed the trial court's orders denying the City's pleas to the jurisdiction. The City filed motions for rehearing in each cause. We held the motions under advisement because of the supreme court's announced reconsideration of its *Reata* opinion upon which we relied.

On June 30, 2006, the Texas Supreme Court withdrew its original opinion in *Reata* and substituted a new opinion in its place. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex.2006). In its new opinion, the supreme court limited the extent of the waiver of sovereign immunity caused by the City's filing claims for affirmative relief. *See id.* at 377. Because the Texas Supreme Court significantly changed its analysis on which we relied when deciding the issue of waiver of sovereign immunity in our original opinion, we grant the City's motion for rehearing and

withdraw our opinion issued August 10, 2004. This is now the opinion of this Court.[1]

## I.

These cases arose out of an ordinance adopted by the City of Dallas in 1979 in accordance with a voter-approved pay referendum. The ordinance stated, among other things, that each sworn police officer, fire fighter, and rescue officer employed by the City would receive a pay raise and that "the current percentage pay differential between grades in the sworn ranks of the Dallas Police Force and the Fire Fighter and Rescue Force shall be maintained." Appellees contend the ordinance amended their alleged employment contracts with the City to add a requirement that the City maintain the percentage pay differential between the grades in all future salary adjustments. Appellees filed suits claiming the City breached its contracts with them by repeatedly raising the pay of the highest ranking officers without making corresponding increases to the salaries received by the lower ranks. Appellees asserted claims for breach of contract seeking back pay, benefits, and prejudgment and post-judgment interest. Appellees also sought a declaratory judgment to establish that their construction of the ordinance was correct.

In response to appellees' claims, the City filed answers and counterclaims for alleged overpayments of salaries. According to the City, if appellees' construction of the ordinance was correct, then all salary adjustments made after the ordinance was adopted were void and unenforceable. The City argued that if the salary adjust-

---

1. Concurrent with issuing this opinion, we also issue our opinion on rehearing in *City of Dallas v. Martin*, 214 S.W.3d 638 (Tex.App.-Dallas 2006). With the exception of the arguments concerning collateral estoppel and ap-

pellees bringing this suit as agents of the City, the issues and arguments addressed in this opinion are substantively identical to those addressed in *Martin*.

ments were unenforceable, appellees were required to return to the City any additional money paid to them pursuant to the allegedly void salary adjustments.

On June 4, 2003, the City filed pleas to the trial court's jurisdiction contending that its governmental immunity from suit had not been waived and, therefore, the trial court lacked subject matter jurisdiction over each case. Appellees responded that the City's immunity from suit was expressly waived in both section 51.075 of the Texas Local Government Code and chapter II of the Dallas City Charter. Specifically, the Local Government Code states that a municipality may "plead and be impleaded in any court." *See* TEX. LOCAL GOV'T CODE ANN. § 51.075 (Vernon 1999). The Dallas City Charter states that the City has the power to "sue and be sued" and to "implead and be impleaded in all courts." DALLAS CITY CHARTER ch. II, § 1(2), (3) (Aug. 1999). Appellees additionally argued the City was collaterally estopped from asserting sovereign immunity because the City litigated the same issue in another case and the Fifth Circuit Court of Appeals decided the issue adversely to the City. The trial court denied the City's pleas to the jurisdiction, and the City appealed.

During the pendency of the City's appeal, the Texas Supreme Court issued its original opinion in *Reata Construction Corp. v. City of Dallas.* In *Reata,* the supreme court held that a city's intervention in a lawsuit to assert claims for affirmative relief constituted a waiver of governmental immunity. *See Reata Constr. Corp. v. City of Dallas,* 47 Tex. Sup.Ct. J. 408, 2004 WL 726906 (Tex. Apr. 2, 2004) (per curiam). Following issuance of the *Reata* decision, appellees in these cases supplemented their briefing to argue that the City's counterclaims for alleged overpayments were claims for affirmative relief invoking the trial court's jurisdiction much like the City's intervention in *Reata.* According to appellees, *Reata* provided another basis to affirm the trial court's denial of the City's plea to the jurisdiction. The City responded by voluntarily dismissing its counterclaims. It then argued that the dismissal of the counterclaims rendered appellees' supplemental argument moot.

Approximately two years after issuing its original opinion in *Reata,* the Texas Supreme Court withdrew its opinion and issued a new opinion limiting the waiver of governmental immunity caused by a governmental entity's assertion of claims for affirmative relief. *See Reata,* 197 S.W.3d at 377. The supreme court also on the same day issued its opinion in *Tooke v. City of Mexia,* 197 S.W.3d 325 (Tex.2006). In *Tooke,* the court addressed the impact of phrases such as "sue and be sued" and "plead and be impleaded" on governmental immunity. The court concluded such phrases did not reflect, in and of themselves, a clear legislative intent to waive immunity. In light of the Texas Supreme Court's recent decisions in *Reata* and *Tooke,* we must re-examine the trial court's orders denying the City's pleas to the jurisdiction.

## II.

■ It is well established that sovereign immunity from suit protects the State of Texas, its agencies, and its officials from lawsuits for damages unless it is waived by clear and unambiguous legislative consent to suit. *See Fed. Sign v. Tex. S. Univ.,* 951 S.W.2d 401, 405 (Tex.1997). A city, such as the City of Dallas, is deemed an agent of the state for sovereign immunity purposes when exercising its powers for a public purpose. *See Reata,* 197 S.W.3d at 377. Appellees' suit against the City is a lawsuit arising out of the City's exercise of its power to adopt public ordinances. Ac-

cordingly, sovereign immunity from suit protects the City, and the court lacks subject matter jurisdiction over these cases unless unambiguous consent to be sued has been granted.

■ Appellees contend that consent was granted by the legislature in section 51.075 of the Texas Local Government Code where the legislature stated that municipalities "may plead and be impleaded in any court." *See* TEX. LOCAL GOV'T CODE ANN. § 51.075. Appellees further argue that consent to suit can be found also in chapter II of the Dallas City Charter, which states that the City has the power to "sue and be sued" and to "implead and be impleaded in all courts." DALLAS CITY CHARTER ch. II, § 1(2), (3) (Aug. 1999).

■ In *Tooke,* the supreme court held the phrases "sue and be sued" and "plead and be impleaded" mean different things in different statutes and do not, by themselves, waive immunity. *See Tooke,* 197 S.W.3d at 342. The court also specifically stated that neither section 51.075 of the Texas Local Government Code nor a city charter provision addressing the capacity of the City of Mexia to "sue and be sued" and "plead and be impleaded" is a clear and unambiguous waiver of immunity. *See id.* at 342–43. The court followed its *Tooke* ruling in *Reata v. City of Dallas* and held that, as with the charter for the City of Mexia, the "sue and be sued" and "plead and be impleaded" language in the Dallas

City Charter did not waive the City's immunity from suit. *See Reata,* 197 S.W.3d at 378. Accordingly, we must likewise conclude that neither section 51.075 of the Texas Local Government Code nor the Dallas City Charter grants the trial court jurisdiction over appellees' claims in these cases.[2]

■ As an alternative basis for finding jurisdiction and affirming the trial court's orders, appellees argue that the City's counterclaims seeking affirmative monetary relief against them waived the City's sovereign immunity from suit. For the purposes of our analysis, we will assume the City's decision to bring counterclaims waived its immunity from suit for appellees' claims in these cases to the extent set forth in *Reata.* What we determine is the effect, if any, of the City's decision to withdraw its counterclaims. Applying *Reata* and its underlying rationale, we conclude that, to the extent the City may have waived its immunity from suit in these cases by filing counterclaims, it reinstated its immunity from suit when it dismissed its counterclaims.

■ In *Reata,* the Texas Supreme Court held that a "decision by the City of Dallas to file suit for damages encompassed a decision to leave its sphere of immunity from suit for claims against it which are germane to, connected with and properly defensive of claims the City asserts." *Id.* This waiver of immunity is

---

**2.** Appellees also argue the City is collaterally estopped from arguing that section 51.075 of the Texas Local Government Code and chapter II of the Dallas City charter do not waive immunity because that issue was decided against the City in *Webb v. City of Dallas,* 314 F.3d 787 (5th Cir.2002). In *Webb,* the Fifth Circuit examined the same provisions of the Local Government Code and the Dallas City Charter and concluded the language was an express waiver of immunity from suit. *See Webb,* 314 F.3d at 795–96. The Fifth Circuit's

opinion in *Webb* pre-dates the Texas Supreme Court's opinions in both *Tooke* and *Reata.* Furthermore, determinations of law are not generally given preclusive effect. *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst,* 90 S.W.3d 268, 288 (Tex.2002). This is particularly true when there is a difference in the forums in which the two actions are determined. *See Tankersley v. Durish,* 855 S.W.2d 241, 246 (Tex.App.-Austin 1993, writ denied).

limited, however. The government continues to have immunity from suit for affirmative damage claims against it for monetary relief exceeding amounts necessary to offset its own claims. *Id.* at 377. The government only waives immunity, therefore, to the extent the opposing party's claims could offset any recovery against it. *Id.* at 378.

■ At the heart of the decision in *Reata* is the seminal idea that sovereigns should be, and traditionally have been, protected from the expense of litigation because governmental functions would be hampered by requiring tax resources to be expended on defending lawsuits and paying judgments rather than on their intended purposes. *See id.* at 375. Where the government brings its own affirmative claims, however, it has obviously concluded that the expense of litigation is worthwhile in light of its potential recovery in that case. *See id.* at 383 (Brister, J., concurring). Once the government asserts its affirmative claims, it must participate as any other litigant and is subject to all proper defensive matters, including offset. *See id.* at 377.

■ A government's decision to expend resources in pursuit of a potential recovery, however, does not encompass the unrelated issue of putting public funds at risk of a potentially costly judgment. It is for this reason that any waiver of immunity is limited to the extent of the government's affirmative claim. *See id.* Although under *Reata* an opposing party may assert an offset claim against the government, the opposing party cannot recover damages against the governmental entity. *See id.* The trial court's jurisdiction to render judgment is limited to deciding the government's entitlement to a particular sum and any appropriate offset of that sum. *See id.* at 383 (Brister, J., concurring). In this way, the government can control the amount of public funds it is willing to subject to the often unpredictable litigation process.

Because the City's waiver of immunity by filing counterclaims in these cases was limited to a determination of whether it could recover any of the amounts it alleged it was owed, the trial court's jurisdiction was necessarily dependent upon the continued existence of the City's counterclaims. Once the City dismissed its affirmative claims, appellees' claims for damages were no longer "germane to," "connected with," or "properly defensive of" any claims being made by the City. Because appellees' claims for damages were no longer in the nature of an offset, they no longer fell within the limited waiver of immunity described in *Reata.* Therefore, the City's now withdrawn counterclaims cannot form the basis of the trial court's jurisdiction over appellees' claims.

■ Although the supreme court's opinions in *Tooke* and *Reata* limited the potential bases for waiver of sovereign immunity, during the same time those opinions were being issued and while this case was pending on rehearing, the Texas Legislature enacted sections 271.151–60 of the Texas Local Government Code. Sections 271.151–60 waive immunity from suit for certain claims against local governmental entities. *See* TEX. LOCAL GOV'T CODE ANN. § 271.152 (Vernon 2005). The sections apply retroactively to claims that arise under a written contract for goods or services if sovereign immunity has not been waived with respect to the claims before the effective date of the subchapter. *See* Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Gen. Laws 1548, 1549. Appellees have pleaded claims for breach of contract. The appropriate action in cases such as these is to remand the claims to the trial court to allow appellees the opportunity to argue that the legislature has

waived the City's immunity from suit by these new statutory provisions. *See City of Houston v. Clear Channel Outdoor, Inc.*, 197 S.W.3d 386, 386–87 (Tex.2006); *McMahon Contracting, L.P. v. City of Carrollton*, 197 S.W.3d 387, 387 (Tex.2006).

■■■ In addition to their breach of contract claims, appellees also brought a declaratory judgment action. Under the Uniform Declaratory Judgments Act, persons "affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder." TEX. CIV. PRAC. & REM.CODE ANN. § 37.004 (Vernon 1997). Governmental entities must be joined in suits to construe their legislative pronouncements. *See Tex. Educ. Agency v. Leeper*, 893 S.W.2d 432, 446 (Tex.1994). Accordingly, there is no governmental immunity in suits to construe legislation. *See id.; Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 859–60 (Tex.2002).

■■■ Sovereign immunity cannot be circumvented, however, by characterizing a suit for damages as a declaratory judgment action. *See IT–Davy*, 74 S.W.3d at 856. Parties cannot frame a breach of contract cause of action as a declaratory judgment action to determine a contract's validity, enforce performance under a contract, or impose contractual liabilities against a governmental entity. *Id.* at 855. In these cases, appellees have claimed the ordinance at issue is part of alleged contracts between them and the City. Appellees have also claimed damages based on breaches of these alleged contracts. Although sovereign immunity does not protect the City from appellees' request for a declaratory judgment construing the ordinance at issue, the Declaratory Judgments

Act does not waive the City's immunity from suits for money damages. *See Leeper*, 893 S.W.2d at 445 (DJA allows courts to declare relief whether or not further relief is or could be claimed.). We conclude, therefore, that the trial court was correct in denying the City's plea to the jurisdiction to the extent appellees' claims for a declaratory judgment are limited to declaring the rights, status, and legal relations of the parties under the ordinance.

Finally, appellees contend that sovereign immunity is not a defense to their contract claims because the City cannot use the doctrine of sovereign immunity against itself. Appellees suggest that by seeking to enforce the alleged contractual benefits granted them as City employees in the referendum process, they are bringing suit not as private third parties but rather as agents of the City itself. We disagree.

The cases cited by appellees in support of their argument involve citizens suing municipalities to compel initiative and referendum acts. *See Blum v. Lanier*, 997 S.W.2d 259 (Tex.1999); *City of Canyon v. Fehr*, 121 S.W.3d 899 (Tex.App.-Amarillo 2003, no pet.). The court held in each case that citizens who exercise their rights under initiative provisions act not as third parties but as the legislative branch of the municipal government. *See Blum*, 997 S.W.2d at 262; *Fehr*, 121 S.W.3d at 902–03. In *Fehr*, the court concluded that such suits were not barred by sovereign immunity because the doctrine cannot be used by the municipality against itself. *See Fehr*, 121 S.W.3d at 902. In the cases before us, appellees are not seeking to compel an initiative or referendum, nor are they in any other way acting as the legislative branch of the municipal government. They are, instead, seeking to recover personal and individual damages for breaches of alleged employment contracts with the City. Because appellees are not acting as a

political subdivision in bringing these suits, the rationale of *Blum* and *Fehr* does not apply.

Based on the foregoing, we affirm the trial court's denial of the City's pleas to the jurisdiction with respect to appellees' requests for a declaratory judgment. We reverse the trial court's orders with respect to appellees' claims for breach of contract and remand the causes to the trial court for further proceedings consistent with this opinion.