In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00213-CR


______________________________




RAFAEL JOSE GUERRA, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33153-B




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Moseley



MEMORANDUM OPINION



 Rafael Jose Guerra was convicted by a Gregg County jury of a subsequent-offense driving
while intoxicated (DWI) charge and was assessed a sentence of twenty years' confinement and a fine
of $3,000.00. See Tex. Penal Code Ann. §§ 49.04, 49.09 (Vernon 2003 & Supp. 2006).

 Guerra files this appeal, raising as his sole point of error the refusal of the trial court to allow
an in-court demonstration of Guerra's manner of walking. We affirm the judgment.

FACTS

 Early on the morning of May 12, 2005, Texas Department of Public Safety Trooper Brandon
Smith was proceeding south in the inside lane of Highway 259 in the southeast part of the City of
Longview in his marked patrol car when a pickup truck driven by Guerra (which was likewise
traveling south on the same street, but in the outside lane) abruptly swerved into the inside lane,
forcing Trooper Smith to take evasive maneuvers to avoid a collision. Smith activated his overhead
lights and pulled Guerra over.

 After he was stopped, Guerra provided the false name of "Carlos Guerra" and a false date of
birth. Smith detected the odor of alcohol emanating from Guerra's breath and testified that Guerra's
speech was slurred. Guerra admitted to having drunk one beer. Based on those observations, Smith
employed three sobriety tests: the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and
the one-legged stand test.

 In conducting the HGN test, Smith explained that there were six clues of intoxication to
observe; Guerra had demonstrated evidence of all six of the clues. 

 Going further, Smith had Guerra perform the walk-and-turn test and the one-legged-stand
test and, observing Guerra's conduct during all of these tests, Smith concluded that probable cause
existed to arrest Guerra for DWI. Guerra refused to provide a specimen of his breath for testing.

 Smith arrested Guerra and took him into custody. Fingerprint evidence revealed Guerra's true
identity and it was determined that Guerra had no valid driver's license. 

 Guerra testified that he had provided an erroneous name and birth date because of a prior
DWI conviction and believed that he was less likely to encounter problems by giving false
information to Smith than by being truthful. He also testified that he had sustained injuries to his
ankles by putting them into a vat of hot milk when he was a child and because both ankles had been
"loosened" when they were run over by a tractor. Guerra maintains that these combined injuries 
afflict him, to the result that he "sometimes walk[s] a little different than normal" with an unusual
gait wherein his feet splay out to the side when he walks and makes him unsteady on his feet. As
a result of the injuries to his feet and ankles, friends and family sometimes call him "[d]uck foot."

 At trial, Guerra wanted to demonstrate his unusual walk for the jury so it could compare his
walk at the time of trial with the walk the jury observed in the videotape taken the night of his arrest. 
The State's objection to this in-court demonstration (1) was sustained, and it is this ruling which is the
subject of Guerra's appeal.

STANDARD OF REVIEW

 Our review of the trial court's exclusion of demonstrations is limited to whether the court
abused its discretion in denying the demonstration. Ginther v. State, 706 S.W.2d 115, 119 (Tex.
App.--Houston [1st Dist.] 1986, pet. ref'd). Review of trial court rulings on demonstrations depends
on the facts of the case. Wright v. State, 178 S.W.3d 905, 919 (Tex. App.--Houston [14th Dist.]
2005, pet. ref'd). The test for abuse of discretion is not whether, in the opinion of the reviewing
court, the facts present an appropriate case for the trial court's action; rather, it is a question of
whether the trial court acted without reference to any guiding rules or principles, and the mere fact
that a trial court may decide a matter within its discretionary authority differently than an appellate
court does not demonstrate such an abuse. State v. Herndon, 215 S.W.3d 901, 907 (Tex. Crim. App.
2007). 

 Other reported appellate decisions generally focus on whether the proffered demonstration
would be substantially similar to the event. Cantu v. State, 738 S.W.2d 249, 255 (Tex. Crim. App.
1987) (en banc); Key v. State, 149 Tex. Crim. 200, 192 S.W.2d 563, 566 (1946); Wright, 178 S.W.3d
at 919. The proponent of the demonstration must show that the conditions under which the
demonstration is conducted are sufficiently similar to the event in question. Cantu, 738 S.W.2d at
255. 

ABUSE OF DISCRETION

 Although Guerra did establish the past medical conditions which sometimes made him walk
in an unusual fashion, he made no attempt to establish and did not establish that the courtroom
demonstration he offered to perform would provide results comparable to those which existed at the
time he performed the field sobriety tests (i.e., in the dark, on the side of a major highway, during
the wee hours of the morning, admittedly after having consumed an alcoholic beverage). Even
though the circumstances existing between a demonstration and an actual occurrence need not be
precisely identical, the trial court has discretion to determine whether dissimilarities warrant
exclusion of evidence. Horn v. Hefner, 115 S.W.3d 255, 257 (Tex. App.--Texarkana 2003, no pet.). 

 Even despite the ruling which disallowed Guerra's attempt to provide a special in-court
demonstration of his manner of walking, Guerra was not deprived of placing evidence before the jury
of his infirmity and its impact on him. Guerra stepped from the witness stand to display the scars
on his legs and ankles, the result of being scalded by milk. In addition to the physical act of walking,
Guerra was questioned at some length about this issue and the jury was able to hear of it. 

 Further, as set out above, there were other strong indicators of intoxication observed by the
officer (e.g., the results of the HGN test, the erratic driving, the smell of alcohol on the breath, the
slurred speech) upon which the decision to charge Guerra rested.

 Absent a showing by Guerra of the similarities between the requested demonstration and the
actual occurrence as a predicate, we are not prepared to say that the trial court abused its discretion
in disallowing the in-court demonstration.

 We affirm the judgment.




 Bailey C. Moseley

 Justice


Date Submitted: August 13, 2007

Date Decided: August 14, 2007


Do Not Publish
1. At trial, the State cited Baker v. State, 879 S.W.2d 218 (Tex. App.--Houston [14th Dist.]
1994, pet. ref'd), claiming then that it held "there are no in-court demonstrations allowed before a
jury because they have no reliability," which is an incorrect statement of the holding in that case. 
The trial court in Baker ordered the evidence of the defendant's unsworn in-court demonstration of
his voice and his attempt at the one-legged-stand test stricken because no proper predicate had been
laid for it--not because such demonstrations are inherently unreliable.



rom that time, it was subject to long and
continuous use by the public.

 With all of these factors in mind, we now examine the summary judgment evidence. The
neighbors provided four affidavits from individuals that address the relevant, older time frame. There
is other summary judgment evidence, but it has no apparent purpose other than to show a trail of
ownership. That is not relevant to this review.

 Ruby Rigsby averred that she had owned property "on the West side of the road the subject
of this suit," and that since 1944 she and the public have used "the road the subject of this suit." She
then goes on to state she had never asked permission to use the road and had always understood it to
be a public road.

 Elphenia Lewis' affidavit stated that she was a descendant of the Callahan family that had
previously owned the Rogers property, that she was familiar with the property and "road that is the
subject of this lawsuit," that she "recall(s) the public using the road and her family allowing this use
when she was a child," that she is now sixty-three years old and has "knowledge that the road that is
the subject of this lawsuit has always been used by the public for as long as I can recall." She then
went on to state, like Rigsby's affidavit, that she had never asked permission to use the road and that,
"I have always understood it to be a public road." 

 Lucretia Rochelle swore that she was also a descendant of the Callahan family that had
previously owned the Rogers property and that she recalled the public using the road and her family
allowing the use when she was a child. She recalled Grover Bishop, an adjoining landowner, using
the road to haul and dump trash on his adjoining property. She stated she is now eighty-eight years
old and had "knowledge that the road that is the subject of this lawsuit has always been used by the
public for as long as I can recall." She also went on to state that she had used the road, that she had
never asked permission to do so, and that she had always understood it was a public road. 

 Celia Duffie stated in her affidavit that she was a descendant of the Hall family that had
previously owned the Rogers property. She stated that she was "familiar with the property and road
that is the subject of this lawsuit," that she recalled the public using the road since she was a child,
that she is now seventy-eight years old, and that, "I have knowledge that the road that is the subject
of this lawsuit has always been used by the public for as long as I can recall." In lockstep with the
other affidavits, she stated, "I have used the road, and have never asked permission to do so. I have
always understood it to be a public road." 

 In response to the neighbors' motion for summary judgment, Rod Rogers presented his own
affidavit. Rogers stated that his parents had purchased the property in the early 1960s and that,
although the property was bordered on the north by Holly Creek Road, access to their property was
not possible from Holly Creek Road because it was blocked by trees. He stated that, instead, they
used a "rutted narrow trail from Holly Creek Road on the western edge of the property" to access the
remainder of their land. He described the lane as "barely wide enough for one vehicle to use and was
so rough that only a truck could use it. My father and I smoothed the lane and put fill material on it
to make it passable." Rogers stated that, when they purchased the property, only one person used the
lane, Grover Bishop. Rogers stated that, although Bishop used the lane only infrequently to dump
materials, his father had given Bishop permission to use the lane. Rogers also stated that Ruby
Rigsby purchased thirty acres abutting the west side of his land in 1979. Rogers also stated that "the
lane has never been used by a law enforcement, fire or ambulance vehicle. No school bus or U.S.
Postal Service vehicle has ever traveled on the Rogers' lane. No county maintenance equipment or
county employees have ever been present on the lane nor done any repairs, maintenance or work of
any kind on the lane." 

 The neighbors filed a very thorough motion with various complaints about Rogers' affidavit,
styled as special exceptions to a number of the paragraphs in his affidavit. In five pages, and fifteen
numbered paragraphs of complaint about a two-page affidavit, the neighbors essentially complain that
Rogers did not show how he had personal knowledge of the matters asserted and that his statements
were thus hearsay and inadmissible. (4) The neighbors also complain that Rogers' affidavit about Rigsby
contradicts her affidavit. (5) Nevertheless, the trial court granted the "special exceptions" to Rogers'
summary judgment evidence without comment. Both parties have ignored that order in briefing this
appeal.

 We first examine some types of evidence used in this type of case. Although county
maintenance of a road has not been dispositive, a number of cases have found dedication in cases in
which county maintenance had been shown. See, e.g., Lindner, 691 S.W.2d at 591-92. Similarly,
cases that found an implied dedication also cited proof that a road had been used for school bus travel
or a mail route. See Las Vegas Pecan & Cattle Co., 682 S.W.2d at 257. Similarly, although as
discussed above, the required continuous use can be by a very limited clientele--courts finding
dedications have also looked to the scope of public use, such as by tourists, fishermen, or fish camp
renters, or examined whether the road use was essential in some way. See Gutierrez, 951 S.W.2d at
838-42. 

 In our case of Reed, the evidence showed that the road at issue was necessary in order to
access another road--which had previously been declared a public road--on an adjoining tract. 
Without the use of Cherry Lane, the Goff road would have been unreachable. Cherry Lane also
appeared on a plat from 1951, and there was testimony that long-time neighbors had used the road 
twice a day since the 1950s and that a neighboring nursery and its customers used the road to access
parts of the nursery.

 Similarly, in Betts, this Court reviewed evidence a road had been used by the public since the
1920s, had been fenced on both sides, and had been (for some years, but ending in the 1950s or
1960s) maintained by the county. We found the evidence sufficient to support a verdict in that case. 
Betts, 165 S.W.3d at 869-70. The evidence in this case is different.

 Further, the question is whether the necessary elements have been proven as a matter of law. 
This case has several factual distinctions from either Betts or Reed. 

 One problem we see with the evidence supporting the summary judgment is that it fails to
establish continuous use before 1963. To be sufficient to support the summary judgment, the
evidence must conclusively prove the "road" had been in continuous use by the public. This evidence
does not conclusively show that. It shows use, at unspecified times during a considerable span of
years, much of which was by individuals who had the right to do so because their parents owned the
property. These affidavits do not conclusively establish that any use that occurred was continuous.

 Another problem we identify in the affidavits relates to the use by the public. While the
affidavits do say the affiants never asked for permission to cross the land, they are executed by
children of prior landowners. Since their parents owned the land at the time, it would seem unlikely 
they would be required to ask for permission to use the "road." They do not conclusively establish
that the use was by the public rather than by the landowner's family. True, each affidavit states the
affiant had always "understood it to be a public road." Although "understanding" that the location
was a public road is some evidence, it is not conclusive.

 The affidavits also state that the descendants of former owners, ages eighty-eight, sixty-three,
and seventy-eight, recalled the public using the road when they were children. While that is evidence
of public use, it says nothing about the continuity of that use.

 Finally, there is no evidence fixing the actual physical location of "the road." Because the
pleadings do not describe the road location, the affidavits--which reference merely "the road that is
the subject of this lawsuit"--do not fix that location. It is impossible to ascertain from this record
whether the road in question is even the same location described by the various affidavits, or, for that
matter, whether they are separately speaking of the same location. One might assume that at least the
affidavits from relatives speak of the same location, but the evidence does not affirmatively show this
to be the case.

 At most, the affidavits indicate that, at some vague points in time while certain mature adults
were children and lived on the property, they used the road and understood it to be a public road. (6) 
Proof was not conclusive.

 We reverse the summary judgment and remand this case to the trial court for further
proceedings.

(2) The Damage Claims Against the County Were Properly Dismissed, While the Declaratory
Judgment Claims Should Not Have Been Dismissed

 Rogers also contends the trial court erred by granting the County's motion to dismiss, which
was done based on sovereign immunity. Rogers claims the County was not immune to his claim
because his claim against the County was for a declaration of rights, not for damages.

 A county is a governmental unit protected by the doctrine of sovereign immunity. (7) Travis
County v. Pelzel & Assocs., 77 S.W.3d 246, 248 (Tex. 2002). The propriety of the County's dismissal
in this case hinges on the extent to which the lawsuit sought damages from the County. The argument
is that, because damages were sought, Rogers had to allege an exception to immunity that would
allow a recovery from the County. If Rogers did not seek damages, then no exception was necessary. 
A declaratory judgment may be sought from a governmental entity, so long as such claim is not a
subterfuge for obtaining a damage award from the entity.

 We recognize that courts have held that certain declaratory judgment actions do not implicate
the doctrines of sovereign or governmental immunity. See, e.g., Tex. Educ. Agency v. Leeper, 893
S.W.2d 432, 446 (Tex. 1994); City of Dallas v. Martin, 214 S.W.3d 638, 644 (Tex. App.--Dallas
2006, pet. filed) (no governmental immunity in suits to construe legislation). Texas courts distinguish
suits to determine a party's right against a governmental unit from suits seeking damages. See City
of Houston v. Houston Firefighters' Relief & Retirement Fund, 196 S.W.3d 271, 277 (Tex.
App.--Houston [1st Dist.] 2006, no pet.). A declaratory judgment action against the government
seeking a declaration of a party's rights and status under a statute is not barred by governmental
immunity. See Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 860 (Tex. 2002);
Bell v. City of Grand Prairie, 221 S.W.3d 317, 323 (Tex. App.--Dallas 2007, no pet.). A party can
maintain a suit to declare rights without obtaining legislative permission. See Houston Firefighters'
Relief & Retirement Fund, 196 S.W.3d at 277.

 But, governmental immunity bars suits for declaratory judgment that seek a declaration of the
government's liability for money damages. See IT-Davy, 74 S.W.3d at 859-60; Bell, 221 S.W.3d at
324. A party cannot circumvent the doctrine of governmental immunity by characterizing a suit for
money damages, such as a contract dispute, as a declaratory judgment action. See IT-Davy, 74
S.W.3d at 856; Martin, 214 S.W.3d at 644; Houston Firefighters' Relief & Retirement Fund, 196
S.W.3d at 277; City of Seagoville v. Lytle, 227 S.W.3d 401, 410 (Tex. App.--Dallas 2007, no pet.).

 Rogers directs us to Oake v. Collin County, 692 S.W.2d 454 (Tex. 1985), as authority that one
can bring a declaratory judgment action against a county in connection with a land dispute. We agree. 
Oake stands for the proposition that sovereign immunity is not a blanket protection for a
governmental entity for actions that truly seek a declaration of rights.

 The County argues that, because the neighbors' action was for ownership and control of the
roadway, it sought the transfer of something of value and thus was a suit for damages. (8) We disagree. 
A suit to declare ownership changes nothing, transfers nothing, causes no result that might be
considered an award of damages. The requested declaratory judgment would not change ownership
or rights; it would only recognize rights that already exist. Thus, that aspect of the County's argument
necessarily fails. See Wood v. Walker, No. 07-05-00392-CV, 2007 Tex. App. LEXIS 2370 (Tex.
App.--Amarillo Mar. 27, 2007, no pet.) (declaratory judgment appropriate remedy in suit involving
existence of county road). (9)

 That conclusion does not entirely doom the County's dismissal. In this case, the pleadings
show that Rogers sought not only declaratory relief, but also damages. Rogers alleged an injury and
sought an award of damages from all parties, including the County.

 If the only real goal of a declaratory judgment action is to gain a money judgment, the suit
must be dismissed. City of Houston v. Williams, 216 S.W.3d 827, 828-29 (Tex. 2007). To the extent
an action seeks damages against a governmental entity for which immunity has not been waived, a
dismissal is required for want of jurisdiction; but to the extent an action truly seeks a declaration of
rights, that action may be maintained against the entity. Lowell v. City of Baytown, No. 01-04-00548-CV, 2007 Tex. App. LEXIS 6292 (Tex. App.--Houston [1st Dist.] Aug. 9, 2007, no pet.); see Bell,
221 S.W.3d at 325 (to extent claimant does not seek money damages, declaratory judgment action
and injunction not barred by governmental immunity). This action included both types of claim.

 The trial court thus did not err by dismissing Rogers' claim against the County for money
damages, but did err in dismissing the declaratory judgment claims.

 We reverse the summary judgment, reverse the dismissal of the County as to the declaratory
judgment action, and remand those portions of the case to the trial court for further proceedings. We
affirm the judgment dismissing from the suit the damage claims against the County.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: October 31, 2007

Date Decided: January 18, 2008


1. In one suit, Stover, Barber, and Rigsby sought judgment that they had the right to use a road
across Rogers' property, arguing it was a public road. In the other suit, Rogers alleged the Stover
parties engaged in a conspiracy to unlawfully acquire his property and slander his title. Rogers' suit
also joined Bowie County, alleging it had waived governmental immunity by claiming ownership
of his land and by conspiring with the other individual defendants to lawfully obtain his land. 
Rogers sought a declaration of rights under the Declaratory Judgments Act and an injunction barring
defendants from trespassing. Rogers also sought damages between $10,000.00 and $100,000.00
from all defendants for trespass.
2. "Since, by a dedication, valuable rights in land pass from the owner, no presumption of an
intent to dedicate arises, unless it is clearly shown by his acts and declarations, or by a line of
conduct, the only reasonable explanation of which is that a dedication was intended." Int'l & G.N.R.
Co. v. Cuneo, 108 S.W. 714, 715 (Tex. Civ. App. 1908).
3. O'Connor v. Gragg, 161 Tex. 273, 339 S.W.2d 878, 882 (1960); see Betts v. Reed, 165
S.W.3d 862, 866 (Tex. App.--Texarkana 2005, no pet.).
4. The neighbors also complained Rogers had misstated a matter set out in a deposition--that
Matthews had stated he had not understood the road to be a county road. Even the quoted section
of the affidavit provided by Stover shows the opposite. Rogers' affidavit precisely sets out exactly
what Matthews did say. 
5. That is permissible, and generally is the purpose of dueling affidavits.
6. We note, too, that no evidence supporting the summary judgment shows the condition of
the "road." The affidavits simply referred to it as a "road" with no further explanation. Rogers'
responsive affidavit describes the "road" as a virtually impassable rut or trail. That may raise a
question about whether a road was involved at all, or merely a trail passable by horses or children
afoot. That state of the proof could also influence the fact issue of "continuous" use before 1963. 
The 1963 condition of the "road" could provide some proof of its use, or lack of use, before that date. 
Since the affidavits do not show the condition of the "road" before 1963, Rogers' affidavit provides
the only evidence of its condition, that it was virtually impassable.
7. Generally, a governmental unit possesses both immunity from liability and immunity from
suit. Pelzel & Assocs., 77 S.W.3d at 248; Catalina Dev., Inc. v. County of El Paso, 121 S.W.3d 704,
705 (Tex. 2003). Governmental immunity has two components: immunity from liability, which bars
enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit
against the entity altogether. Tooke v. City of Mexia, 197 S.W.3d 325, 332 (Tex. 2006). No
argument suggests that the County would be immune from this suit, instead of just immune from
liability.
8. There is authority holding that, where the relief sought is declaratory but would require the
transfer of value, the relief is not declaratory in nature. See Sante Rehab, L.P. v. Nat'l Heritage Ins.
Co., No. 03-03-00738-CV, 2004 Tex. App. LEXIS 7174 (Tex. App.--Austin Aug. 12, 2004, pet.
denied) (mem. op.). That case, however, sought to order an agency to take an action which would
require transfer of money. 
9. A trial court has discretion to award reasonable and necessary attorney's fees as are equitable
and just in suits filed under the Declaratory Judgments Act. Tex. Civ. Prac. & Rem. Code Ann.
§ 37.009 (Vernon 1997). A trial court's discretion in deciding whether to award attorney's fees in
a declaratory judgment action is broadly construed and will not be reversed absent a clear abuse of
discretion. Oake, 692 S.W.2d at 455; Wood, 2007 Tex. App. LEXIS 2370.