NUMBERS 13-05-391-CV AND 13-05-392-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


KIRK WAYNE McBRIDE, SR., Appellant,


v.
 


TEXAS DEPARTMENT OF CRIMINAL JUSTICE, ET AL., Appellees.

 

On appeal from the 156th District Court 


of Bee County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela 


Memorandum Opinion by Justice Rodriguez



 Pro se appellant, Kirk Wayne McBride, Sr., sued appellees, Texas Department
of Criminal Justice (TDCJ) for violation of the Deceptive Trade Practices Act (DTPA);
Thomas J. Prasifka, Denise Menchaca, and William Stephens for (1) the common law
tort of conversion, (2) deprivation of personal property under the Fourteenth
Amendment, and (3) assumpsit; and K. M. Weseman for denial of adequate medical
treatment under the Eighth Amendment. The trial court dismissed McBride's claims
against the TDCJ and entered an instructed verdict in favor of Weseman. The jury
ruled in favor of appellees Prasifka, Menchaca, and Stephens. (1) By seven issues,
McBride complains that the evidence was legally and factually insufficient to support
the jury's verdict and that the trial court erred by entering an instructed verdict in favor
of Weseman, not submitting an instruction on assumpsit, dismissing appellant's DTPA
claim against TDCJ, overruling appellant's motion for new trial, and denying appellant
a judgment nihil dicit (2) against Stephens. (3) We affirm.

I. Background

 While incarcerated at the McConnell Unit of the TDCJ, McBride purchased a
word processor from a vendor outside the prison. The mail room provided McBride
with a returned package form explaining that a package had not been approved and
had been returned to the sender. Later, McBride was notified on a TDCJ
correspondence/contraband denial form that his package was denied because,
among other things, it was not "approved per offender property policy/warden." After
appealing this denial with the Director's Review Committee, McBride sued appellees. 
The trial court dismissed McBride's claim against the TDCJ under Chapter 14 of the
Civil Practices and Remedies Code, and a jury trial began on his claims against the
remaining defendants. See Tex. Civ. Prac. & Rem. Code Ann § 14.003(a)(2) (Vernon
2002). The trial court entered an instructed verdict in favor of Weseman, and the jury
ruled in favor of Prasifka, Menchaca, and Stephens.

II. Legal and Factual Sufficiency

 By his first two issues, McBride contends that the evidence was legally and
factually insufficient to support the jury's verdict that Prasifka, Menchaca, and
Stephens did not commit the common law tort of conversion and did not deprive him
of his rights under the Fourteenth Amendment.

A. Standard of Review

 An appellant challenging the legal sufficiency of the evidence supporting an
adverse finding on which he had the burden of proof must show that "the evidence
establishes, as a matter of law, all vital facts in support of the issue." Dow Chem. Co.
v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). We must consider the evidence in the
light most favorable to the judgment, crediting evidence favorable to the verdict if
reasonable jurors could, and disregarding evidence contrary to the verdict unless
reasonable jurors could not. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 
"If there is no evidence to support the finding, the reviewing court will then examine
the entire record to determine if the contrary proposition is established as a matter of
law." Dow Chem. Co., 46 S.W.3d at 241. "The final test for legal sufficiency must
always be whether the evidence at trial would enable reasonable and fair-minded
people to reach the verdict under review." City of Keller, 168 S.W.3d at 827. Jurors
are the sole judges of the credibility of the witnesses and the weight to be given to
their testimony. Id. at 819.

 To prevail on a factual sufficiency challenge to an adverse finding on an issue
for which the appellant had the burden of proof, the appellant must demonstrate that
the adverse finding is against the great weight and preponderance of the evidence. 
Dow Chem. Co., 46 S.W.3d at 242. After considering and weighing all of the
evidence, this Court can only set aside the verdict if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. 
Id.

B. Analysis

1. Conversion

 The first question of the jury charge asked, "Do you find that any of those
named below [Prasifka, Stephens and Menchaca] committed a conversion of the
word processor of Kirk Wayne McBride?" The jury answered in the negative. The
jury charge defined conversion as occurring "when there is an unauthorized and
unlawful assumption and exercise of dominion and control over the personal property
of another, to the exclusion of, or inconsistent with the owner's rights or the person
entitled to the property involved's rights." 

 McBride contends, in effect, that the evidence establishes, as a matter of law,
that appellees were not authorized to deny him possession of the word processor. 
See Dow Chem. Co., 46 S.W.3d at 241. However, the Administrative Directive of the
Texas Department of Criminal Justice (Directive), admitted by appellees as evidence
of their authority to deny offenders possession of property, mandates that "TDCJ shall
establish what personal and State-issued property an offender is authorized to
possess or obtain while in custody." Furthermore, under the Directive, "[a]n offender
who wishes to possess property while in TDCJ custody thereby consents to TDCJ's
rules and regulations regarding the acquisition, possession, storage, and disposition
of said property." Section II(C)(4) of the Directive, under the heading "Outside
Vendor," sets out the procedure for an inmate acquiring property from a vendor
outside the prison: "[The] [o]nly items authorized for purchase or receipt from an
outside vendor are those items specified in the TDCJ Correspondence Rules or
purchased in accordance with procedures in this [D]irective." Pursuant to the
Directive,

 [a]n offender wishing to order items from an outside vendor must submit
to the Warden: an I-60, which includes a picture or description of the
item, as well as the price and size; and an I-25 "Inmate Request for
Withdrawal." An offender may not obtain any item from an outside
vendor without the prior written approval of the Warden. However,
Warden approval of the offender's purchase does not relieve the
offender of his responsibility to ensure proper storage.


 Warden Prasifka testified that he did not inform McBride that he could purchase
the word processor at issue. Warden Prasifka explained that: 

 If I would have approved something like that, . . . I would tell the offender
to come for an interview or send me an I-60. When they would come in
with that I-60 for the interview I would . . . find out what was going to be
sent in, get a description of it, and then I would approve it or not approve
it. If I approved it I would take that I-60 and send it to Ms. Menchaca,
the property officer.


 Officer Menchaca testified that her "duties as an offender property officer is [sic]
to maintain custody of offenders' property and . . . of contraband[ (4)] in accordance with
83.72 and any other duties that are assigned to me as a correctional officer." Officer
Menchaca testified that she never told McBride that he could purchase the word
processor at issue and that he was not given authorization to do so. In addition,
Officer Menchaca stated that she did not have the authority to allow McBride to
purchase the word processor. She testified, "Only the warden can make [sic] that
authority." (5) According to Officer Menchaca, although the word processor was shipped
to her, the mail room employees still had to verify that the package had been
approved by the warden. Officer Menchaca explained that if a package is approved,
"I usually show them [mail room employees] an I-60, a verification that the item has
been approved and then they give me the package." In this case, however, Officer
Menchaca testified that she did not find an I-60 for the word processor McBride
ordered.

 In summary, there is evidence, pursuant to the Directive, that offenders are
required to follow proper procedure in order to purchase property from an outside
vendor. The evidence shows that the Directive requires the filing of an I-60 that must
be approved by the warden. Both Warden Prasifka and Officer Menchaca testified
that they did not give McBride permission to order the word processor.

 Moreover, McBride did not provide evidence that the warden signed an I-60. 
On the contrary, McBride testified that prior to purchasing the word processor, he did
not submit to the warden, in writing, a picture or description of the item, or the price
and size of the item, as required in an I-60 pursuant to the Directive.

 Therefore, after considering the evidence in the light most favorable to the
judgment, crediting evidence favorable to the verdict if reasonable jurors could, and
disregarding evidence contrary to the verdict unless reasonable jurors could not, we
conclude that the evidence was legally sufficient to support the jury's finding that
appellees were authorized to deny McBride possession of the word processor. See
City of Keller, 168 S.W.3d at 827; see also Dow Chem. Co., 46 S.W.3d at 241. Having
determined that there is evidence to support the jury's finding, we need not examine
the entire record to determine if the contrary proposition is established as a matter of
law. See Dow Chem. Co., 46 S.W.3d at 241. Furthermore, after considering and
weighing all of the evidence, we do not find the verdict so contrary to the
overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. 
See id. at 242. Therefore, the evidence is not factually insufficient to support the jury's
finding that the appellees acted with authority. We overrule McBride's first issue.

2. Fourteenth Amendment Deprivation of Property

 In his second issue, McBride specifically complains that the evidence is legally
and factually insufficient to support the jury finding that the word processor posed a
legitimate threat to security. In Question No. 3 of the charge, the jury was asked, "Do
you find that any one of the named defendants below violated the Plaintiff's 14th
amendment rights by withholding or confiscation of the word processor. [sic]" The
charge instructed the jury as follows: 

 The denial of the prisoner's rights to possess a certain item while
confined does not violate a prisoner's due process rights under the 14th
amendment to the United States Constitution if for security reasons
prison officials determine which items a prisoner may or may not have.
It is a violation of a prisoner's rights for prison officials to confiscate or
prohibit the receipt of property that does not pose a legitimate threat to
security or does not rationally relate to a legitimate penological interest. 


The jury answered, "No," to Question No. 3.

 Warden Prasifka testified on direct examination that there were several issues
with this particular word processor that might pose a security risk. First, Warden
Prasifka was concerned that the word processor would hinder "shake downs." He
explained that the size was a security issue because it "would be difficult to
shakedown even in the cell let alone walking down the hallway with it." (6) Warden
Prasifka was concerned that because the officers are responsible for "shaking down"
the offenders' cells, perhaps the officer would not "shake it down" knowing that if the
word processor were damaged, the officer would have to pay for it. He also testified
that because of its design, "I'm not even sure where I would begin to shake it down
because it looks like you could hide things very easily down in it." 

 Warden Prasifka was also concerned that the word processor at issue used
removable storage disks and "items could be stored on this whether gang messages,
whether hits on the inside or the outside . . . [and] this disk is easily hidden. . . . [I]t
has removable disks. And then you could send all of those messages out." Another
concern was a telephone jack that Warden Prasifka "assum[ed] . . . could be hooked
up to an outside telephone. . . . On that outside access it could be a range [sic] of
escape. . . . [The offenders] could receive a fax." He was also concerned that the
telephone access could lead to communication regarding hits outside or inside the
prison.

 Warden Prasifka then testified that a word processor like the one at issue is a
further security risk because of how much it costs ($550). According to Warden
Prasifka, offenders may assume someone who owns such an expensive word
processor has a lot of money. "[T]hen they [other offenders] may try to intimidate .
. . [the owner of the expensive item] to try to get money or property out of them. So
it's as much for the offenders' safety as it is for the staff that work on the facility."

 Therefore, after considering the evidence in the light most favorable to the
judgment, crediting evidence favorable to the verdict if reasonable jurors could, and
disregarding evidence contrary to the verdict unless reasonable jurors could not, we
conclude that the evidence was legally sufficient to support the jury's finding that the
word processor posed a security threat. See City of Keller, 168 S.W.3d at 827; see
also Dow Chem. Co., 46 S.W.3d at 241. As the sole judges of the witnesses
credibility, the jury was free to believe that Warden Prasifka determined that McBride
could not acquire the word processor for security reasons. See City of Keller, 168
S.W.3d at 819. Additionally, after considering and weighing all of the evidence, we
do not find the verdict so contrary to the overwhelming weight of the evidence as to
be clearly wrong and manifestly unjust. See Dow Chem. Co., 46 S.W.3d at 242. 
Therefore, the evidence was not factually insufficient to support the jury's verdict. We
overrule McBride's second issue.

III. Instructed Verdict

 In his third issue, McBride contends that the trial court erred when it entered an
instructed verdict in favor of Weseman. Specifically, appellant complains there was
evidence to support submitting the issue of whether Weseman violated McBride's
Eighth Amendment rights to the jury.

A. Standard of Review

 If the plaintiff does not present evidence "raising a fact issue essential to the
plaintiff's right of recovery," a directed verdict in favor of a defendant is appropriate. 
Prudential Ins. Co. v. Fin. Review Servs., 29 S.W.3d 74, 77 (Tex. 2000). When
reviewing the grant of an instructed verdict, we consider all evidence in the light most
favorable to the party against whom the verdict was instructed. See Collora v. Navarro,
574 S.W.2d 65, 68 (Tex. 1978). A directed verdict is proper "when no evidence of
probative force on an ultimate fact element exists, or when the probative force of
slight testimony is so weak that only a mere surmise or suspicion is raised as to the
existence of essential facts." Kingston v. Helm, 82 S.W.3d 755, 758 (Tex.
App.--Corpus Christi 2002, pet. denied).

B. Applicable Law

 The government is required to provide medical care for its prisoners. Estelle
v. Gamble, 429 U.S. 97, 103 (1976). In Gamble, the United States Supreme Court
concluded that "deliberate indifference to serious medical needs of prisoners
constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth
Amendment." Id. at 104 (quoting Gregg v. Georgia, 428 U.S. 153, 173 (1976)); County
of El Paso v. Dorado, 180 S.W.3d 854, 863 (Tex. App.--El Paso 2005, pet. denied). 
Therefore, in order to establish liability, the inmate must "show that a state official
acted with deliberate indifference to a substantial risk of serious medical harm and
that injuries resulted." County of El Paso, 180 S.W.3d at 863 (quoting Wagner v. Bay
City, 227 F.3d 316, 324 (5th Cir. 2000)).

C. Analysis

 On cross-examination, McBride testified that when he moved from another unit
to McConnell, he left a pair of glasses he ordered from the "free world" at the old unit. 
McBride complained that he requested "to purchase another pair of outside glasses
because I had been told I could purchase them when I was on the [old unit]." He
stated that at the McConnell Unit he was told"[t]hey don't do it [order glasses from the
free world]." When asked whether he was told that he could get TDCJ glasses,
McBride said, "Yes." And McBride testified that he received the TDCJ glasses a year
later. According to McBride, he did not submit an I-60 for the TDCJ eyeglasses
because "[t]hey told me they had a policy, so it wouldn't have done no good."

 A letter dated September 18, 2001, from the TDCJ Health Services Division
that outlined the TDCJ's policy regarding prescription eyeglasses was admitted at
trial. In the letter, the TDCJ Health Services Division encouraged McBride to
"continue to submit requests to the medical department." The letter informed
McBride, "You should also contact the warden's office to see if they have any
additional guidelines you should follow." McBride also testified regarding a second
letter dated October 31, 2001, from The University of Texas Medical
Branch-Galveston Correctional Managed Care (the Department). This October letter
advised McBride that the Department had conducted an investigation into his request
for glasses from an outside vendor. The letter notified McBride that the Department's
investigation found that "[t]he policy and procedure does not authorize free world
eyewear." The letter advised McBride that on September 5, 2001, "you were
encouraged to submit a request to be seen for your eye problems. . . . As of [October
31, 2001] you have not submitted a request to be seen for eye problems/need for
glasses."

 In order to show that Weseman acted with deliberate indifference to McBride's
medical needs, McBride was required to provide evidence that Weseman had actual
or constructive knowledge of a grave risk of harm and that Weseman failed to take
easily available measures to address the risk. See County of El Paso, 180 S.W.3d at
866. McBride testified that he requested eyeglasses from an outside vendor and that
his request was denied. However, McBride offered no evidence that Weseman
denied his request or acted with deliberate indifference to his medical need. See
Kingston, 82 S.W.3d at 758. Additionally, McBride did not produce evidence that he
submitted an I-60 requesting eyeglasses from TDCJ as he was instructed or that
Weseman denied McBride's request for TDCJ eyeglasses. After considering all of the
evidence in the light most favorable to McBride, see Collora, 574 S.W.2d at 68, we
conclude McBride did not present any evidence raising a fact issue regarding
Weseman's alleged violation of McBride's Eighth Amendment rights. See Kingston,
82 S.W.3d at 758. Thus, the trial court did not err in directing a verdict in favor of
Weseman. See Prudential Ins. Co., 29 S.W.3d at 77. We overrule McBride's third
issue.

IV. Claim of Assumpsit

 In his fifth issue, (7) McBride asserts that the trial court erred in not submitting his
claim of assumpsit to the jury because there was evidence that Warden Prasifka
informed McBride that he would sign the I-60 and place it in the mail room, thus
creating a promise that McBride assumed would be fulfilled. After setting out the law
of assumpsit without citation to authority, McBride makes no argument that a promise
creates a claim in assumpsit. Without a clear and concise argument with appropriate
citation to authority, we have nothing to review. See Tex. R. App. P. 38.1(h); Plummer
v. Reeves, 93 S.W.3d 930, 931 (Tex. App.--Amarillo 2003, pet. denied) ("A point of
error unsupported by citation to any legal authority presents nothing for the court to
review."); see Richard v. Cornerstone Constructors, Inc., 921 S.W.2d 465, 469 (Tex.
App.--Houston [1st Dist.] 1996, writ denied) ("Although courts generally construe the
briefing rules liberally, a point of error unsupported by citation to any authority
presents nothing for this Court to review."). Therefore, we overrule McBride's fifth
issue.

V. Dismissal of DTPA Claim

 In his sixth issue, McBride contends that the trial court erred by dismissing his
DTPA claim against the TDCJ as frivolous because the TDCJ "engaged in a business
like venture dispensing its sovereign immunity." McBride argues that "it is clear that
TDCJ-CID was in a partnership by introducing the word-processors' [sic] into
commerce by selling the word-processors for its own benefit."

 Under chapter 14 of the Texas Civil Practices and Remedies Code, if the court
finds that the claim is frivolous, it may dismiss the claim. See Tex. Civ. Prac. & Rem.
Code Ann. § 14.003(a)(2) (Vernon 2002). The trial court may consider several factors
when determining whether an action is frivolous, including whether the claim has no
arguable basis in law or in fact. Id. at § 14.003(b)(2). The proper standard of review
for the dismissal of a frivolous claim pursuant to chapter 14 is an abuse of discretion.
Jackson v. Tex. Dep't of Crim. Justice-Inst. Div., 28 S.W.3d 811, 813 (Tex.
App.--Corpus Christi 2000, pet. denied). We determine whether the trial court
abused its discretion by examining whether it acted without reference to any guiding
rules and principles. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42
(Tex. 1985).

 The State argues that McBride's DTPA claim has no arguable basis in law and
fact because as a State agency, TDCJ, is entitled to sovereign immunity except for
the limited waiver of immunity created by statute. See Bragg v. City of Dallas, 605
S.W.2d 669, 671 (Tex. Civ. App.--Dallas 1980, no writ). We agree.

 A governmental unit is immune from suit unless the immunity is waived by clear
and unambiguous legislative consent. See Tex. Gov't Code Ann. § 311.034 (Vernon
Supp. 2006); City of Dallas v. Martin, 214 S.W.3d 638, 642 (Tex. App.--Dallas 2006,
pet. filed); see also Univ. of Tex. Med. Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994)
("[F]or the Legislature to waive sovereign immunity, it must do so by clear and
unambiguous language."). Under the DTPA, a "consumer" may maintain a suit when
specified actions of a "person" constitute the producing cause of actual damages. 
Tex. Bus. & Com. Code Ann. § 17.50(a) (Vernon Supp. 2007). A partnership is defined
as a "person" under the DTPA. See Tex. Bus. & Com. Code Ann § 17.45(3) (Vernon
Supp. 2007). McBride did not offer any evidence to the trial court that TDCJ is a
partnership, and on appeal, he does not offer authority that the TDCJ is a partnership
under the DTPA. Furthermore, governmental entities are not included in the DTPA's
definition of "person." See Tex. Bus. & Com. Code Ann. § 17.45(3); see also Kerrville
HRH, Inc. v. City of Kerrville, 803 S.W.2d 377, 382 (Tex. App.--San Antonio 1990, writ
denied) (opining that "the legislature intended to include cities within the range of
possible plaintiffs under the [DTPA], but to exclude them as defendants"). Therefore,
the trial court did not abuse its discretion in dismissing McBride's DTPA claim against
the TDCJ. See Jackson, 28 S.W.3d at 813; see also Downer, 701 S.W.2d at 241-42. 
We overrule McBride's sixth issue.

VI. Motion for New Trial

 By his seventh issue, McBride contends that the trial court abused its discretion
in overruling his motion for new trial. See Tex. R. Civ. P. 329b(c), (e). He first claims
that he offered evidence that demonstrates that Warden Prasifka and Officer
Menchaca committed perjury, and that as a result he should be granted a new trial. 
In support of his motion for new trial, McBride offered an unsworn declaration from
Jesse Caraway, a witness he had called at trial, as evidence that Warden Prasifka
and Officer Menchaca committed perjury regarding whether offenders are allowed to
own word processors with disk drives. Caraway attached to his declaration a copy
of what appears to be excerpts from a user manual of a word processor--the
"Whisperwriter." This user manual was not introduced into evidence at trial; therefore,
we construe McBride's argument as a claim of newly discovered evidence. See Tex.
R. Civ. P. 324(b)(1).

 When a motion for new trial is overruled, we determine whether the trial court
abused its discretion. Strackbein v. Prewitt, 671 S.W.2d 37, 38 (Tex. 1984). Again,
a trial court abuses its discretion when it acts without reference to any guiding rules
or principles. Downer, 701 S.W.2d at 241-42.

 A party may not rely on new evidence in a motion for new trial without showing,
among other things, that the evidence was newly discovered and could not have been
discovered through due diligence prior to trial. Jackson v. Van Winkle, 660 S.W.2d
807, 809 (Tex. 1983), overruled on other grounds by Moritz v. Preiss, 121 S.W.3d 715
(Tex. 2003) (explaining that in addition to showing the evidence is newly discovered
and undiscoverable through due diligence, the movant must show that the newly
discovered evidence is not cumulative and would have produced a different result if
a new trial were granted); Fantasy Ranch, Inc. v. City of Arlington, 193 S.W.3d 605, 615
(Tex. App.--Fort Worth 2006, pet. denied); McMahn v. Greenwood, 108 S.W.3d 467,
500 (Tex. App.--Houston [14th Dist.] 2003, pet. denied).

 Because McBride has not argued or shown that this evidence is newly
discovered and that he could not have discovered it through due diligence, the trial
court did not act without reference to any guiding rules or principles. Downer, 701
S.W.2d at 241-42. Furthermore, because Caraway offered testimony at trial that he
owned a word processor with a disk drive, such as the "Whisperwriter," the evidence
is cumulative. See Jackson, 660 S.W.2d at 809. Therefore, the trial court did not
abuse its discretion by not granting McBride's motion for new trial based on his
assertion that Warden Prasifka and Officer Menchaca perjured themselves. 
Strackbein, 671 S.W.2d at 38.

 Next, McBride asserts that by denying his motion, the trial court abused its
discretion because Officer Menchaca allegedly damaged his typewriter while it was
in the courtroom. We also construe this as a claim that there is newly discovered
evidence. However, McBride did not offer any evidence in his motion for new trial that
the word processor was damaged. Moreover, McBride has not argued, nor has he
established, that this evidence is so material that it would probably produce a different
result if a new trial were granted. See Jackson, 660 S.W.2d at 809. Therefore, the
trial court followed guiding rules and principles, see Downer, 701 S.W.2d at 241-42,
and did not abuse its discretion in denying McBride's motion for new trial. See
Strackbein, 671 S.W.2d at 38. We overrule McBride's seventh issue.

VII. Nihil Dicit

 By his eighth issue, McBride contends that he was entitled to a judgment nihil
dicit against Stephens. McBride acknowledges that Stephens was served with
process, filed an answer, and appeared for trial. However, McBride argues that
because Stephens did not testify, the merits of McBride's case against Stephens were
not put in issue. We disagree.

 "[A] true nihil dicit judgment . . . is usually limited to situations where (1) the
defendant has entered some plea, usually of a dilatory nature, but such plea has not
placed the merits of the plaintiff's case in issue, or (2) the defendant has placed the
merits of the case in issue by filing an answer, but such answer has been withdrawn." 
Frymire Eng'g Co. v. Grantham, 524 S.W.2d 680, 681 (Tex. 1975). In this case,
Stephens filed an answer denying all allegations in McBride's petition, thus placing
the merits of McBride's case in issue. See id. Furthermore, Stephens did not
withdraw his answer. See id. Therefore, McBride's complaint that Stephens did not
testify is irrelevant to our analysis in this case. We conclude that McBride was not
entitled to a judgment nihil dicit. Accordingly, we overrule his eighth issue.

VIII. Conclusion

 In conclusion, we affirm the trial court's judgments.

 

 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 28th day of February, 2008.
1. McBride appeals from the trial court's cause numbers B-01-1474-CV-B and B-01-1474-CV-B1. 
On November 22, 2005, this Court granted appellant's motion to consolidate these cases for purposes
of appeal.
2. "'Nihil dicit literally means he says nothing.'" Sharif v. Par Tech, Inc., 135 S.W.3d 869, 872 (Tex.
App.--Houston [1st Dist.] 2004, no pet.). Usually a nihil dicit is granted if either "(1) the defendant has
entered some plea, usually of a dilatory nature, but such plea has not placed the merits of the plaintiff's
case in issue, or" (2) the defendant filed an answer placing the merits of the case in issue, but has
withdrawn that answer. Id.
3. In his brief McBride omitted his fourth issue, thus misnumbering the issues presented. We
will address the seven issues McBride included in his brief according to his numbering.
4. The Directive defines contraband as "altered, out-of-place, or excesses of, authorized
property; and any item which an offender is prohibited to possess or obtain while in custody."
5. McBride also asserts that there is evidence showing that Officer Menchaca signed an I-60 that
he submitted requesting the word processor. However, the Directive requires that the warden, not
Officer Menchaca, sign the I-60. McBride was unable to produce an I-60 signed by the warden. Thus,
this argument is without merit. 
6. Warden Prasifka testified that "the offender has to be able to move from cell to cell, unit to
unit. He has to be able to take this typewriter around the facility."
7. McBride presents his third and then his fifth issue, omitting a fourth issue in his brief.