# IN THE SUPREME COURT OF TEXAS

════════════

No. 07-0284

════════════

CITY OF DALLAS, PETITIONER,

v.

KENNETH E. ALBERT ET AL., RESPONDENTS

════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

════════════════════════════════════════════════════

**Argued December 17, 2009**

JUSTICE JOHNSON delivered the opinion of the Court, in which JUSTICE WAINWRIGHT, JUSTICE MEDINA, JUSTICE GREEN, JUSTICE GUZMAN, and JUSTICE LEHRMANN joined, and in which CHIEF JUSTICE JEFFERSON and JUSTICE HECHT joined except to Part II-B.

JUSTICE HECHT filed an opinion concurring in part and dissenting in part, in which CHIEF JUSTICE JEFFERSON joined.

JUSTICE WILLETT filed a dissenting opinion.

This appeal involves a pay dispute between the City of Dallas and many of its police officers and firefighters. Pursuant to a referendum approved by the voters, the City adopted an ordinance addressing the pay of "each sworn police officer and fire fighter and rescue officer employed by the City of Dallas." Claiming the City did not properly pay them according to the ordinance, some firefighters and police officers (collectively, the Officers) sued the City. They sought both a declaratory judgment construing the ordinance and damages for breach of contract. The City counterclaimed, alleging that if the Officers had not been paid correctly, they had been overpaid instead of underpaid and the City was entitled to reimbursement for the overpayments. The City

eventually sought dismissal of the Officers' claims on the basis of governmental immunity, then later dismissed its counterclaim. The trial court denied the City's immunity claim and this interlocutory appeal followed. During the pendency of the appeal, the Legislature amended the Local Government Code to provide for a limited, retroactive waiver of certain local governmental entities' immunity from suit.

The main issues before us involve governmental immunity from suit. We will address the issues in the order that the court of appeals did: (1) what is the effect on the City's immunity of its filing, then non-suiting, the counterclaim; (2) what is the effect, if any, of the Legislature's retroactive waiver of immunity; (3) whether the City has immunity from the Officers' declaratory judgment action; and (4) whether the City lacks immunity from suit because the pay ordinance was adopted by referendum. We conclude that (1) by nonsuiting its counterclaim the City did not reinstate complete immunity from the Officers' pending claims; (2) the case must be remanded for the trial court to consider whether, by amending the Local Government Code, the Legislature waived the City's immunity; (3) the City has immunity from the declaratory judgment action; and (4) the ordinance having been adopted by referendum did not result in waiver or abrogation of the City's immunity.

## I. Background

Pursuant to a referendum that voters passed, the City of Dallas adopted an ordinance in 1979 addressing pay for police officers, firefighters, and rescue workers. *See* TEX. LOC. GOV'T CODE

§ 9.005(a), (b). The ordinance provided for a 15% pay raise and that "the current percentage pay differential between grades in the sworn ranks of [the Officers] shall be maintained."[1]

A dispute arose between the City and the Officers over whether the ordinance provided for a one-time pay raise or whether it provided for a one-time pay raise and also required the percentage pay differential to be maintained indefinitely so that if higher-ranking Officers received raises, lower-ranking Officers also received raises in order to maintain the differential. In 1994, the Officers sued the City.

The Officers sought both a declaratory judgment interpreting the ordinance and damages for breach of contract. Regarding their damages claim, the Officers argued that (1) the ordinance amended their employment contracts and the City was contractually bound to maintain the percentage pay differential after its adoption; and (2) the City breached the Officers' contracts by raising the pay of higher-ranking Officers without also raising the pay of lower-ranking Officers to maintain the percentage pay differential required by the ordinance. The Officers sought money damages for back pay and benefits as well as interest.

---

[1] The ordinance, in relevant part, states:

> Be it ordained that: (1) From and after October 1, 1978, each sworn police officer and fire fighter and rescue officer employed by the City of Dallas, shall receive a raise in salary in an amount equal to not less than 15% of the base salary of a City of Dallas sworn police officer or fire fighter and rescue officer with three years service computed on the pay level in effect for sworn police Officers and fire fighters and rescue Officers of the City of Dallas with three years service in effect in the fiscal year beginning October, 1977; (2) The current percentage pay differential between grades in the sworn ranks of the Dallas Police Force and the Fire Fighter and Rescue Force shall be maintained; and (3) Employment benefits and assignment pay shall be maintained at levels of not less than those in effect for the fiscal year beginning October, 1977.

Dallas, Tex., Ordinance 16084 (Jan. 22, 1979).

3

The City responded to the Officers' suit, then some time later filed a counterclaim to recover alleged overpayments to the Officers. The City asserted that if the pay raises were improper, then any raises given because the City misconstrued the ordinance were void and the Officers who received the raises must repay them. Later, the City filed a plea to the jurisdiction based on governmental immunity from suit. The Officers countered that the City's immunity had been expressly waived by Local Government Code Section 51.075 (stating a municipality "may plead and be impleaded in any court") and Chapter II of the Dallas City Charter (stating the City may "sue and be sued" and "implead and be impleaded in all courts"). *See* TEX. LOC. GOV'T CODE § 51.075; DALLAS CITY CHARTER ch. II, § 1(2), (3) (Aug. 1999).

The trial court denied the City's plea to the jurisdiction, and the City filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(8). While the City's appeal was pending, Texas sovereign immunity[2] law was both clarified and modified.

On the judicial front, we issued our first opinion in *Reata Construction Corp. v. City of Dallas*, 47 TEX. SUP. CT. J. 408 (Tex. 2004) (*Reata I*). We held that the City waived immunity from suit by asserting claims for affirmative relief in a lawsuit. *Id.* at 410. After *Reata I* issued, the City nonsuited its counterclaim. Then, on rehearing, we withdrew the *Reata I* opinion and substituted a new opinion. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006). In the new opinion we held that a governmental entity does not have immunity from suit for monetary claims against it that are "germane to, connected with, and properly defensive to" affirmative claims made

---

[2] The State's immunity is referred to as sovereign immunity, while that of political subdivisions of the State is referred to as governmental immunity. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). For ease of reference we will generally use the term "governmental immunity."

4

by the entity, to the extent the claims against the entity offset the entity's claims. *Id.* at 378. The same day we decided *Reata*, we also decided *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006). In *Tooke*, we held that the phrases "sue and be sued" and "plead and be impleaded" do not constitute clear and unambiguous waivers of governmental immunity. *Id.* at 342.

Further, while the case was pending at the court of appeals, the Legislature enacted Texas Local Government Code Sections 271.151– .160. *See* Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 1, 2005 Tex. Gen. Laws 1548, 1548. Those provisions waive some local government entities' immunity from suit for certain contract claims. *See* TEX. LOC. GOV'T CODE § 271.152. The waiver of immunity is retroactive—it applies to claims based on contracts executed before the statute's effective date, so long as governmental immunity has not been previously waived with respect to the claims. Act of May 23, 2005, 79th Leg., R.S., ch. 604, § 2, 2005 Tex. Gen. Laws 1548, 1549.

In light of the judicial and legislative proceedings that took place after the trial court made its rulings, the court of appeals affirmed in part, reversed in part, and remanded the case for reconsideration by the trial court. 214 S.W.3d 631, 638. Regarding immunity, the court of appeals held that under *Reata* the City did not have complete immunity once it filed a counterclaim for damages, but after it nonsuited the counterclaim it was immune from all the Officers' breach of contract claims. *Id.* at 635. The court reasoned that the City's nonsuit of its counterclaim reinstated the City's immunity from suit because the Officers' claims were no longer germane to, connected with, or properly defensive to anything the City was asserting, and the City was not making monetary claims against the Officers so the Officers' damages claims could not be offsets to claims of the City. *Id.* at 635-36. The court of appeals remanded the case for the trial court to consider

whether the Legislature retroactively waived the City's immunity through Local Government Code Sections 271.151–.160. *Id.* at 636-37. Regarding the declaratory judgment action, the court of appeals determined that the Officers' action could proceed, but cautioned that money damages could not be recovered under the guise of declaratory relief. *Id.* at 637. Finally, the court of appeals held that the adopting of the ordinance by means of referendum did not preclude the City's having immunity from the Officers' claims. *Id.* at 637-38.

The parties filed cross-petitions for review, which we granted.[3]

## II. Discussion

### A. Governmental Immunity

Governmental immunity is a common law doctrine. *City of Galveston v. State*, 217 S.W.3d 466, 471 (Tex. 2007). Its boundaries are established by the judiciary, but we have consistently held that waivers of it are the prerogative of the Legislature. *Id.* Governmental immunity is comprised of immunity from both suit and liability. *See Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999). Immunity from liability protects entities from judgments while immunity from suit deprives courts of jurisdiction over suits against entities unless the Legislature has expressly consented:

> [I]mmunity from suit bars an action against the state unless the state expressly consents to the suit. The party suing the governmental entity must establish the state's consent, which may be alleged either by reference to a statute or to express

---

[3] We consolidated four petitions, *City of Dallas v. Albert* (No. 07-0284), *City of Dallas v. Barber* (No. 07-0285), *City of Dallas v. Arredondo* (No. 07-0286), and *City of Dallas v. Willis* (No. 07-0287). We separately consolidated two other petitions, *City of Dallas v. Martin* (No. 07-0288), and *City of Dallas v. Parker* (No. 07-0289). The Court heard oral argument on all six petitions at the same time. The State of Texas submitted an amicus curiae brief.

6

legislative permission. Since as early as 1847, the law in Texas has been that absent the state's consent to suit, a trial court lacks subject matter jurisdiction.

*Id.* at 638 (citations omitted); *see Hosner v. DeYoung*, 1 Tex. 764, 769 (Tex. 1847).[4]  In *Reata*, we concluded that immunity from suit as to a money damages claim does not completely deprive a trial court of jurisdiction over a governmental entity such as the City when the entity asserts an affirmative claim for monetary relief in a lawsuit:

> where the governmental entity has joined into the litigation process by asserting its own affirmative claims for monetary relief, we see no ill befalling the governmental entity or hampering of its governmental functions by allowing adverse parties to assert, as an offset, claims germane to, connected with, and properly defensive to those asserted by the governmental entity. *And, our decisions that immunity from suit does not bar claims against the governmental entity if the claims are connected to, germane to, and defensive to the claims asserted by the entity, in effect, modified the common-law immunity doctrine and, to an extent, abrogated immunity of the entity that filed suit.*

*Id.* at 376-77 (emphasis added).  Referencing prior decisions dealing with the subject, including *Catalina Dev., Inc. v. Cnty. of El Paso*, 121 S.W.3d 704, 705-06 (Tex. 2003), in which we discussed the possibility that a governmental entity might waive its immunity by conduct, we stated what may have been less than clearly articulated in those opinions: the common law doctrine of governmental immunity had been in a limited manner modified and abrogated for governmental entities that file affirmative litigation claims.  *Id.* at 375-77.

Although litigation actions of governmental entities underlay our decisions in *Reata* and similar cases, we did not hold that those actions effected waivers of immunity; rather, they were factors we considered in defining the contours of immunity.  In other words, we have not, in *Reata*

---

[4] When we refer to immunity, we will be referring to immunity from suit unless otherwise stated.

7

or other decisions, altered the principles that (1) the boundaries of sovereign immunity are determined by the judiciary, *City of Galveston*, 217 S.W.3d at 471, and (2) waivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of the Legislature. *See id.* at 468 ("We take as our starting point the premise that in Texas a governmental unit is immune from tort liability unless the Legislature has waived immunity.") (quoting *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998)); *Harris Cnty. v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994) ("We have repeatedly held that the extent of waiver of governmental immunity is a matter for the Legislature to determine.") (citations omitted).

Turning to the issues before us, we first address the City's counterclaim and nonsuit.[5]

## B. The Counterclaim and Nonsuit

### 1. Effects

The City urges, and the court of appeals held, that the City's nonsuit of its counterclaim reinstated the City's immunity from suit. The Officers disagree, and so do we.

Pursuant to our opinion in *Reata*, the City's filing of a counterclaim for affirmative relief resulted in each officer having two possible categories of damages claims pending. The first category consisted of claims that would offset, in whole or in part, any recovery by the City and that were germane to, connected with, and properly defensive to the City's claims. The second category consisted of (1) claims for amounts over and above the amount that would offset the City's claim

---

[5] Without intending to indicate an opinion on the matter, we acknowledge that on remand the trial court may determine that amendments to the Local Government Code have waived the City's immunity from suit. If that occurs, some of our discussion may not be necessary to resolution of the issues. Nevertheless, because this case has been pending for so long we address the issues to give the courts below and the parties guidance.

but were nevertheless germane to, connected with, and properly defensive to the City's claims; and (2) claims that simply were not germane to, connected with, or properly defensive to the City's claim. The City had immunity from suit as to both types of claims in the second category, but it did not have immunity from suit as to claims in the first category. Because the City did not have immunity from suit as to claims in the first category once it filed its counterclaim, it could not either "reinstate" such immunity, or, put differently, in effect create it, by nonsuiting.

Once a governmental entity has asserted an affirmative claim for monetary relief, it must participate in the litigation process as an ordinary litigant as to that claim. *Reata*, 197 S.W.3d at 377. And when a governmental entity asserts affirmative claims for monetary recovery, whether by filing suit or by counterclaim, the trial court acquires jurisdiction over the entity's claims and certain offsetting, defensive claims asserted against the entity. *Id.* That is not because the entity effected a change in its immunity by filing a claim, but because the judiciary has abrogated the entity's common law immunity from suit as to certain offsetting claims. *Id.*

Under litigation rules applicable to ordinary litigants, and thus to the City once it filed its counterclaim, the City was entitled to nonsuit its counterclaims. *See* TEX. R. CIV. P. 162 (providing that a party may nonsuit a claim at any time before all its evidence is introduced at trial except for rebuttal evidence). If a claim is timely nonsuited, the controversy as to that claim is extinguished, the merits become moot, and jurisdiction as to the claim is lost. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam). But a nonsuit is not allowed to prejudice the right of an adverse party to be heard on a pending claim for affirmative relief. TEX.

9

R. CIV. P. 162; *see Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex. 2008). Because the Officers had affirmative claims pending when the City nonsuited its counterclaim, the trial court retained jurisdiction over the Officers' claims to the extent it had acquired it. *See Villafani*, 251 S.W.3d at 469.

The money damage claim of each officer is based on allegations that under a proper interpretation of the pay ordinance the officer has been underpaid. The City's counterclaim alleged that under a proper interpretation of the ordinance if any officer had not been paid correctly then the officer had been overpaid and the City was entitled to recover the amount of overpayment. Both the City and the Officers cannot be correct, unless at some time an officer was underpaid and at another time the same officer was overpaid. And each of the officer's claims is independent. That is, if one officer was underpaid and another overpaid, the claims would not be combined so that the City would owe a net amount to the two officers together or so that the two officers together would owe the City a net amount.

The Officers' claims clearly were germane to—that is, relevant to[6]—and connected with the City's counterclaim: they were both based on the question of pay for the Officers' employment. Also, the Officers' claims were properly defensive to the City's counterclaim because a finding that an officer had been underpaid would at least inferentially rebut the City's claim that the officer had been paid correctly or overpaid for the particular period for which the underpayment was made. *See Dillard v. Tex. Elec. Co-op.*, 157 S.W.3d 429, 430 (Tex. 2005) ("An inferential rebuttal defense operates to rebut an essential element of the plaintiff's case by proof of other facts."); *Select Ins. Co.*

_____

[6] *See* BLACK'S LAW DICTIONARY 756 (9th ed. 2009).

10

*v. Boucher*, 561 S.W.2d 474, 477 (Tex. 1978) ("The basic characteristic of an inferential rebuttal is that it presents a contrary or inconsistent theory from the claim relied upon for recovery."). On the other hand, once the City nonsuited its counterclaim the Officers' claims could not offset any recovery by the City. So although the trial court had jurisdiction over the Officers' claims that would have been offsets to the City's counterclaim, after its nonsuit the City would not have a recovery for the Officers' claims to offset. Nor could the Officers recover any judgment for damages against the City if the City was immune from suit as to the Officers' damages claims apart from the claims over which the trial court had jurisdiction because of their offsetting nature *vis-a-vis* the City's counterclaim. But even though the Officers could not recover judgment for damages against the City based on the trial court's limited jurisdiction resulting from the City's counterclaim, the City's nonsuit did not reinstate, or more aptly, create, immunity for the City. Rather, it put the Officers in the posture of other similarly situated claimants: they could not prevail on their breach of contract claims because they could not recover a judgment for damages and the City was not pursuing a claim for damages to which an offset would apply. *See Intercontinental Grp. P'ship v. KB Home Lone Star LLC*, 295 S.W.3d 650, 655 (Tex. 2009) (holding that a jury finding of "0" damages on a contract claim requires rendition of a take-nothing judgment when damages is the only relief sought).

### 2. Response to the Dissent

The dissent says that the character of the Officers' claims was changed because "the assertion of the [City's] counterclaim gives the plaintiff's claim a different character; it becomes defensive and offsetting, when it was not before." ___ S.W.3d ___, ___ (Hecht, J., dissenting). We

11

disagree. The nature of the Officers' claims did not change; the defensive, offsetting claims were the same as the claims that exceeded amounts that would offset the City's counterclaims. The dissent's approach would result in the City's action of nonsuiting its counterclaim effectively creating immunity for itself as to the Officers' claims that were defensive and offsetting, thus depriving the trial court of jurisdiction over those claims. For two primary reasons we decline to adopt that position.

First, to the extent the trial court had jurisdiction over the Officers' claims, the jurisdiction did not attach because the City's actions either changed the nature or character of the offsetting claims or somehow abrogated its immunity from suit. Jurisdiction attached because this Court has altered the boundaries of immunity from suit: governmental entities do not have immunity from offsetting claims germane to, connected to, and properly defensive to monetary claims by the entities. The City could not reinstate or create something it did not have. Allowing the City to create immunity for itself by saying that nonsuiting a counterclaim changes the character of the Officers' claims would substantively clothe the City with the power to deprive the trial court of jurisdiction by its actions. Just as the City generally cannot waive immunity from suit by its actions, it cannot create immunity by its actions.

Second, there is no need to alter established principles in this area of the law when applying established principles addresses the issue. Under established principles and rules, the end result of the City's nonsuit is the same regardless of whether the nonsuit results in the Officers' claims being disposed of by a plea to the jurisdiction or another proceeding such as by motion for summary judgment. Summary judgment might take a little longer to obtain and result in more attorney's fees

12

and effort by the City than would a plea to the jurisdiction, but the City made the choice to expend time and assets on litigation when it filed its counterclaim. And a governmental entity in the City's position will effectively continue to have the option of having its immunity from suit determined by interlocutory appeal. The entity still has immunity from suit as to claims in the second category outlined above. Once the entity asserts that it has such immunity, the trial court's ruling on the question will ordinarily remain subject to interlocutory appeal. The dissent's proposed course would create uncertainty and litigation over whether, and if so, when and how an entity's conduct in some manner resulted in a change in its immunity—regardless of whether the change is labeled as being the result of waiver or a change in the character of one of the claims against it.

The dissent says that failing to afford a governmental entity full immunity from suit after nonsuiting claims for relief will cause much confusion. We disagree. There will be no more confusion than before such a nonsuit. Assuming the entity had full immunity before making its affirmative claims, if it decides to forego its claims it can dismiss them, make both a motion for summary judgment and a motion to dismiss based on immunity from suit, and it should prevail on all the claims against it regardless of whether the claims against it were defensive, offsetting claims, or otherwise. Such a process comports with our prior decisions to the effect that after governmental entities decide to litigate, they are bound to participate in the litigation process as an ordinary litigant. *E.g.*, *Reata*, 197 S.W.3d at 377. The process also precludes entities from having the power to, by their actions, deprive a trial court of jurisdiction by nonsuiting if matters do not go well for them as to their affirmative claims.

13

Accordingly, we disagree with the court of appeals to the extent it held that the City reinstated full immunity from suit by nonsuiting its counterclaim.

### C. Legislative Waiver of Immunity

Section 271.152 of the Local Government Code provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

TEX. LOC. GOV'T CODE § 271.152. A "contract subject to this subchapter" is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." *Id.* § 212.151(2). The language is a clear and unambiguous waiver of governmental immunity for certain breach of contract suits. *City of Houston v. Williams*, ___ S.W.3d ___, ___ (Tex. 2011).

The court of appeals remanded the issue of whether the Local Government Code amendments waive the City's immunity for the Officers' breach of contract claims. Neither party appealed that ruling.

We have remanded cases that were on appeal when the Legislature enacted the waiver of immunity in order that trial courts could first consider the waiver issue. *See*, *e.g.*, *City of Houston v. Clear Channel Outdoor, Inc.*, 197 S.W.3d 386, 386-87 (Tex. 2006); *McMahon Contracting, L.P. v. City of Carrollton*, 197 S.W.3d 387, 387 (Tex. 2006). Albert has, by post-submission motion, sought leave for the parties to submit briefing on and have us consider the issue. We recognize that

14

this case has been pending for an extraordinarily long time because of various factors, many of which were out of the control of the parties. Nevertheless, we decline to address the merits of the issue in light of (1) the failure of the parties to challenge the court of appeals' remanding of it, and (2) our having remanded similarly situated cases so the trial court could first consider the statutory waiver issue.

We next address whether immunity precludes the Officers' action under the Declaratory Judgment Act (DJA) for construction of the pay ordinance. The court of appeals held that it did not.

## D. The Declaratory Judgment Action

While the case was awaiting oral argument here, we decided *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009). We affirmed the principle that the DJA does not enlarge a court's jurisdiction; it is a procedural device for deciding cases already within a court's jurisdiction. *Id.* at 370-71; *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). The DJA waives a municipality's immunity in a suit that involves the validity of a municipal ordinance, TEX. CIV. PRAC. & REM. CODE § 37.006(b), but a party cannot circumvent governmental immunity by characterizing a suit for money damages as a claim for declaratory judgment. *City of Houston v. Williams*, 216 S.W.3d 827, 828-29 (Tex. 2007) (per curiam). For example, in *Williams*, we held that the City of Houston was immune from suit where a group of firefighters was seeking a declaratory judgment regarding statutory lump sum payments of accumulated vacation and sick leave. *Id.* at 828. We held that because the firefighters' only alleged injury had already occurred and their only plausible remedy was an award of money damages, they could not circumvent the City's governmental immunity by requesting declaratory relief. *Id.* at 829.

15

The Officers are not attempting to invalidate the pay ordinance. To the contrary, they are attempting to enforce the ordinance according to its terms as they read it. And like the firefighters in *Williams*, the Officers do not dispute that the City is immune from their declaratory judgment claims regarding past due payments. But they claim that the City's immunity is waived as to their declaratory judgment action seeking an interpretation of the ordinance and contract with regard to the salary to be paid in the future. Assuming without deciding that the City's immunity would be waived in such a situation, we disagree that the Officers sought a declaration governing their future relationship with the City. In their trial court pleadings, the Officers alleged that they sustained damages equal to the difference between the amount of their salaries already paid by the City and the amount the City should have paid. They also asserted that they were seeking no damages for any back pay accrued following May 27, 1998, when the City adopted another pay resolution. The Officers made no claim for injunctive relief, future payments, or any other future action from the City. Because the Officers' only potential relief was an award of money damages, the City is immune from their declaratory judgment claims. *See id.*

The Officers assert that if we determine their declaratory judgment claims are actually ultra vires claims that they should have brought against city officials, then we should remand the case so they can amend their pleadings. *See Heinrich*, 284 S.W.3d at 371-72 (holding that a suit seeking a declaratory judgment that a governmental official acted without legal or statutory authority, such as where a statute or the constitution requires that a contract be performed in a certain way, is an ultra vires claim that must be brought against the official). But *Heinrich* clarified that only prospective, not retrospective, relief is available in an ultra vires claim. *Id.* at 376. Because the

16

Officers sought only retrospective relief, their declaratory judgment claims must be dismissed. *See*
*id.*

We turn next to the Officers' assertion that the City does not have immunity because the pay ordinance was adopted through the referendum process. The court of appeals disagreed with the Officers. So do we.

### E. Effect of the Referendum

The Officers assert that because this is a suit to enforce a voter-approved referendum, governmental immunity does not, or should not, apply. Addressing their arguments in logical order, we first consider their contention that on a policy basis the City's immunity in suits such as this should be abrogated. Referencing *Reata*, the Officers posit that because governmental immunity is a common-law doctrine, the Court should hold that it does not exist here because the purposes for immunity are inapplicable. The Officers claim that because the City's citizens made a policy decision requiring expenditure of city money, the rationale behind immunity—to protect the public treasury—is missing. *See Heinrich*, 284 S.W.3d at 375-76 (noting that the modern justification for immunity is protecting the public fisc).

The Officers' suit is for pay they assert is due and unpaid. The City asserts it does not owe the money. If the City is correct, the voters did not approve expenditure of the funds in the referendum. And suit to determine whether the Officers or the City is correct constitutes a suit for money damages. We have long recognized that immunity protects a governmental entity from suits for money damages absent Legislative consent. *See Heinrich*, 284 S.W.3d at 377; *Fed. Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 405 (Tex. 1997). In *Reata*, we concluded that immunity from suit was

abrogated to a limited degree for two primary reasons: first, it would have been fundamentally unfair to allow the City to assert affirmative claims against another party while claiming immunity from the other party's claims connected to, germane to, and defensive to the City's claims; and second, the City had little room to complain about litigation costs because it had decided to expend resources on litigation when it filed its affirmative claim. *Reata*, 197 S.W.3d at 375-76. But here we do not see any fundamental unfairness or inequity occurring just because the ordinance was adopted through the referendum process. Nor do we see how the fact that the ordinance was adopted by referendum should cause it to be treated any differently for immunity purposes from one adopted by the Dallas City Council. No one urges that it is any more or less effective as an ordinance than any other validly adopted ordinance. Accordingly, we decline to abrogate the City's immunity from suit based on the ordinance because it was adopted by referendum.

We next consider the Officers' arguments that consent to their suit against the City exists. First, they assert that the ordinance must be considered consent for suit because the referendum is only effective if its results are enforceable, and allowing immunity to trump an action to enforce the ordinance defeats the true purpose of the referendum. Again we disagree. The purpose of the referendum was to adopt the ordinance, just as that is the intent of any legislative body that adopts an ordinance or law. When the citizens approved the ordinance by referendum they were acting as the legislative body of the City. *See Blum v. Lanier*, 977 S.W.2d 259, 262 (Tex. 1999) ("Citizens who exercise their rights under initiative provisions act as and 'become in fact the legislative branch of the municipal government.'" (quoting *Glass v. Smith*, 244 S.W.2d 645, 649 (Tex. 1951)). Their actions in that capacity had the same effect insofar as adoption of the ordinance as legislative actions

18

of the city council would have had if the council had adopted the ordinance absent the referendum. Moreover, the Officers do not argue that language in the ordinance purports to give consent for their damages suit against the City, even if a city ordinance could waive immunity.[7]

Next, the Officers argue that because the pay ordinance was adopted by referendum, that is, the citizens acting as a legislative body, immunity from suit must have been waived because the City would otherwise be asserting immunity against itself. The Officers reference *City of Canyon v. Fehr*, in which the court of appeals held that governmental immunity did not bar a suit by citizens to compel the City to *order* a referendum. 121 S.W.3d 899, 902-03 (Tex. App.—Amarillo 2003, no pet.). The argument misses the mark. In *Fehr*, citizens who opposed new zoning ordinance amendments sued the City, seeking to have the changes submitted as an issue in a referendum election. *Id.* at 901-02. The court of appeals reasoned that because the citizens were acting as the legislative branch of the city in the referendum process, allowing the city to invoke governmental immunity as to their suit would effectively result in the city using the immunity doctrine against itself. *Id.* at 902-03; *see also Blum*, 997 S.W.2d at 262. In *Blum*, the Court concluded that those who are qualified to vote and who sign a petition for initiative and referendum "have a justiciable interest in seeing that their legislation is submitted to the people for a vote." *Blum*, 997 S.W.2d at 262. The concepts underlying *Fehr* and *Blum* are not relevant here. The Officers are not acting as

---

[7] In *Tooke*, the argument was made that the city waived immunity by charter language providing the city "may sue and be sued, . . . implead and be impleaded in all courts and places and in all matters whatsoever." 197 S.W.3d at 344. We did not address the question of whether the city could waive its own immunity from suit because even if it could, the language in question did not clearly and unambiguously do so. *Id.*

the legislative branch of the City. They are acting as private citizens seeking to recover money damages.

Based on the foregoing, we conclude that adoption of the ordinance by referendum did not result in loss, removal, or waiver of the City's governmental immunity as to the Officers' claims. We further conclude, as did the court of appeals, that the ordinance itself does not serve as consent to the Officers' suit just because it was adopted by referendum.

### III.  Conclusion

The judgment of the court of appeals is reversed and the case is remanded to the trial court for further proceedings in accordance with this opinion.

_____
Phil Johnson
Justice

**OPINION DELIVERED:**  August 26, 2011