**Opinion issued August 26, 2021**



In The

# Court of Appeals

For The

# First District of Texas

———————————

### NO. 01-19-00764-CV

———————————

### BRANDON LEWIS, Appellant

### V.

### FIRE CHIEF LARRY DI CAMILLO, STAFFORD FIRE MARSHAL'S OFFICE, AND THE CITY OF STAFFORD, Appellees

---

### On Appeal from the 434th District Court
### Fort Bend County, Texas
### Trial Court Case No. 19-DCV-260484

---

### MEMORANDUM OPINION

Following the termination of his employment with the Stafford Fire Department, appellant Brandon Lewis sued the City of Stafford, the Stafford Fire Marshal's Office, and Fire Chief Larry Di Camillo ("Chief Di Camillo") (collectively, "appellees"). Appellees filed a plea to the jurisdiction, asserting the

doctrine of governmental immunity. The trial court granted appellees' plea to the jurisdiction, and Lewis appealed.

We affirm.

## Background

On September 4, 2018, Lewis was terminated from his position as an Inspector/Investigator with the Stafford Fire Department. About two weeks before, on August 22nd, Chief Di Camillo received information from Peter E. Alvarado, the Emergency Management Coordinator for the Stafford Fire Marshal's Office, about Lewis's prior employment with the Missouri City Fire Department. Alvarado had been informed by the Missouri City Fire Marshal's Office ("MCFMO") that Lewis was not allowed to conduct business or aid in investigations in Missouri City because Lewis, previously an intern with the MCFMO, was fired from the Missouri City Fire Department after being accused of stealing a book. Alvarado reviewed Lewis's employment files and found that Lewis did not list his previous work for the Missouri City Fire Department on his applications, his personal history statement, or his resume. Alvarado provided this information to Chief Di Camillo in a signed, written memorandum (the "August 22nd Memorandum").

On September 4th, Chief Di Camillo provided Lewis with a signed, written "Complaint Notification – FD AI-18-001" (the "Complaint Notification"). In the Complaint Notification, Chief Di Camillo informed Lewis that he was advised by

2

Alvarado of Lewis's termination from the Missouri City Fire Department in 2008 "for untruthfulness in reference to the theft of a book of another [i]ntern." Chief Di Camillo stated that it appeared Lewis "failed to divulge this information in response to the requested background information regarding [his] previous employment status" and that the documents Lewis provided did not "indicate that [Lewis] had ever been employed by the Missouri City Fire Department at any time." Because it appeared that Lewis "falsified these documents and purposefully misled the City of Stafford and TCOLE [Texas Commission on Law Enforcement] by omitting required information," Chief Di Camillo ordered an Administrative Investigation into Lewis's "alleged falsification of government documents and untruthfulness regarding [his] time with the City of Missouri City." Chief Di Camillo accused Lewis of "failing to truthfully provide relevant information on [his] employment application and [p]ersonal [h]istory [s]tatement[,] as required." Chief Di Camillo also provided Lewis a copy of the August 22nd Memorandum.

On the same day, Chief Di Camillo provided Lewis with an "Administrative Investigation FD 18-001 (FD AI 18-00)," which stated that Chief Di Camillo had reviewed the complaint "alleging omission of work history during the application and background process for employment and falsification of a TCOLE document" and agreed with Alvarado's findings. As a result, Chief Di Camillo terminated Lewis's employment. Chief Di Camillo informed Lewis of his right to appeal the

3

termination either in writing or in person to Chief Di Camillo within five business days, or by September 11th. And Lewis signed a document indicating he had received the "Notification of Complaint for Untruthfulness" and, "[a]dditionally, . . . ha[d] been provided a copy of the complaint."

Lewis appealed his termination to Chief Di Camillo on September 6th, three business days before his deadline to do so. On September 11th, Chief Di Camillo sustained the original decision to terminate Lewis's employment and informed Lewis of his right to appeal the termination to the City of Stafford City Council. Lewis elected not to pursue an appeal to the City Council.

In March 2019, Lewis filed his original petition and supporting affidavit against Chief Di Camillo in his official capacity,[1] the Stafford Fire Marshal's Office, and the City of Stafford. Lewis sought a judgment declaring that appellees failed to comply with the requirements of Chapter 614 of the Texas Government Code because they did not provide him with a copy of the complaint against him

---

[1] Lewis also sued Chief Di Camillo in his personal capacity. Lewis has not raised any arguments in this Court, or in the trial court, as to whether Chief Di Camillo could be subject to an ultra vires suit in his personal capacity. A brief must contain "a clear and concise argument for the contentions made," supported by "appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). The failure to provide argument and analysis in support of an issue can result in waiver. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018). We conclude Lewis waived any personal-capacity claims against Chief Di Camillo. *See, e.g.*, *Bailey v. Smith*, 581 S.W.3d 374, 387 n.6 (Tex. App.—Austin 2019, pet. denied) (holding plaintiff waived claims against defendants in individual capacities because plaintiff failed to mention these claims in appellate brief).

4

within a reasonable time.[2] Lewis alleged their failure to do so constituted an ultra vires exception to governmental immunity. Appellees answered and filed a plea to the jurisdiction, arguing that Lewis had not pleaded facts giving rise to a violation of Chapter 614 of the Texas Government Code and, therefore, had no basis for overcoming appellees' governmental immunity. Lewis amended his petition and filed a response to appellees' plea to the jurisdiction, attaching a supplemental affidavit in support.

After a hearing, the trial court granted appellees' plea to the jurisdiction. This appeal followed.

## Plea to the Jurisdiction

In five related issues, Lewis challenges the trial court's grant of appellees' plea to the jurisdiction.

## A. Standard of Review

We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). Whether a court has subject matter jurisdiction is a question of law. *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law. *Miranda*, 133 S.W.3d at 226. "However, in

---

[2] Lewis also sought injunctive and mandamus relief.

5

some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact." *Id.*

When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in the plaintiff's favor and look to the pleader's intent. *Id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend his pleading. *Miranda*, 133 S.W.3d at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to amend. *Id.*

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *Id.* at 227. When the consideration of a trial court's subject matter jurisdiction requires the examination of evidence, the trial court exercises its discretion in deciding whether the jurisdictional determination should be made at a preliminary hearing or await a fuller development of the case, mindful that this determination must be made as

6

soon as practicable. *Id.* Then, in a case in which the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.* Like a traditional summary judgment motion, if the evidence creates a fact question regarding the jurisdictional issue, the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Id.* at 227–28. If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, however, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## B. Governmental Immunity

Governmental immunity applies to political subdivisions of the State, while the immunity of the State itself is referred to as sovereign immunity. *City of Dallas v. Albert*, 354 S.W.3d 368, 372–73 (Tex. 2011). "When performing governmental functions, political subdivisions derive governmental immunity from the state's sovereign immunity." *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (footnote omitted). Governmental immunity comprises both immunity from liability and immunity from suit. *Albert*, 354 S.W.3d at 373. "Immunity from liability protects entities from judgment while immunity from suit deprives courts of jurisdiction over suits against entities unless the Legislature has expressly consented[.]" *Id.* Thus, the Legislature can waive a political subdivision's

7

governmental immunity. *See id.* at 374 ("[W]aivers of sovereign immunity or consent to sue governmental entities must generally be found in actions of the Legislature.").

A suit for declaratory or injunctive relief against a state official to compel compliance with a statutory provision is not a suit against the State and is not barred by governmental immunity. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 370 (Tex. 2009). Such a suit prevents an officer from acting ultra vires and does "not seek to alter government policy but rather to enforce existing policy." *Id.* at 372. An ultra vires suit must allege and prove that an officer acted without legal authority or failed to perform a purely ministerial, non-discretionary act. *Id.* at 372. The proper party for an ultra vires suit is the state actor in his official capacity, as the State retains immunity from suit, even if a judgment against the servant in his official capacity will impose liability on the State as a whole. *See id.* at 373.

The Texas Declaratory Judgments Act contains a waiver of immunity from suit. *See* TEX. CIV. PRAC. & REM. CODE § 37.006(b); *Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.*, 435 S.W.3d 393, 403 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). If a party joins a governmental entity and seeks a declaration construing a particular ordinance or statute, immunity from suit is waived. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 633–35 (Tex. 2010). But governmental immunity will bar an otherwise proper

declaratory-judgment claim that will have the ultimate effect of establishing a right to relief against a governmental entity for which the Legislature has not waived immunity. *See Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011).

**C.      Analysis**

Lewis alleges that appellees failed to perform a necessary ministerial act and acted outside their authority by failing to provide him with a signed complaint— the August 22nd Memorandum—within a reasonable time after it was filed in violation of Section 614.023 of the Texas Government Code. *See* TEX. GOV'T CODE § 614.023(a). Lewis admits he received the August 22nd Memorandum on September 4th, the day he was terminated, but contends the 13-day delay was unreasonable and denied him a reasonable opportunity to collect evidence to defend himself before he was terminated. He contends that the reasonableness of this 13-day delay is a fact question that precluded the trial court from granting appellees' plea to the jurisdiction.

Appellees argue that the trial court properly granted the plea to the jurisdiction because, even construing the facts alleged in Lewis's amended petition and affidavits in his favor, they fully complied with Chapter 614 and there is no fact question as to reasonableness considering the Texas Supreme Court's opinion in *Colorado County v. Staff*, 510 S.W.3d 435 (Tex. 2017). Because the undisputed

9

facts establish appellees complied with Chapter 614, they contend there is no basis for a waiver of governmental immunity and the plea to the jurisdiction was properly granted. We agree with appellees.

Government Code Chapter 614, Subchapter B addresses a category of circumstances in which a "complaint" is made against a peace officer, and it requires a specified procedure to be followed before the head of a local law enforcement agency may "consider" the complaint or take "disciplinary action" on it, including suspension or termination from employment. *See* TEX. GOV'T CODE §§ 614.021–.023. Subchapter B provides in pertinent part:

### § 614.021. Applicability of Subchapter

(a) Except as provided by Subsection (b), this subchapter applies only to a complaint against . . . (2) a fire fighter who is employed by this state or a political subdivision of this state; (3) a peace officer under Article 2.21, Code of Criminal Procedure, or other law who is appointed or employed by a political subdivision of this state[.][3]

### § 614.022. Complaint to Be in Writing and Signed by Complainant

To be considered by the head of a state agency or by the head of a fire department or local law enforcement agency, the complaint must be:

(1) in writing; and

(2) signed by the person making the complaint.

### § 614.023. Copy of Complaint to Be Given to Officer or Employee

---

[3]    The parties do not dispute that Chapter 614 of the Texas Government Code applies to Lewis.

10

(a) A copy of a signed complaint against a law enforcement officer of this state or a fire fighter, detention officer, county jailer, or peace officer appointed or employed by a political subdivision of this state shall be given to the officer or employee within a reasonable time after the complaint is filed.

(b) Disciplinary action may not be taken against the officer or employee unless a copy of the signed complaint is given to the officer or employee.

(c) In addition to the requirement of Subsection (b), the officer or employee may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless:

(1) the complaint is investigated; and

(2) there is evidence to prove the allegation of misconduct.

*Id.* §§ 614.021–.023.

In applying this statute, courts have observed that it provides a measure of procedural protection for law enforcement officers by protecting them from adverse employment action based on unsubstantiated accusations. *See, e.g.*, *Turner v. Perry*, 278 S.W.3d 806, 823 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

In *Staff*, Mark Staff, a deputy sheriff, was terminated based on performance deficiencies identified in a "Performance Deficiency Notice (Termination)" provided to him by his supervisor, Lieutenant Troy Neisner. 510 S.W.3d at 439. The deficiency notice provided details about three specific incidents and indicated the investigation culminating in Staff's dismissal began after the county attorney informed the sheriff that "Staff's behavior during a recorded traffic incident was

11

'inappropriate and needed to be addressed'" and suggested the sheriff review the dash-cam footage of the incident. *Id.* Neisner informed Staff that all three incidents violated the department policy manual, and he recommended the termination of Staff's employment, "effective immediately." *Id.* at 440. Neisner advised Staff that he had 30 days to appeal the termination to the sheriff for a "final" decision on the matter. *Id.* The deficiency notice, signed by Neisner, was provided to Staff at the time of his termination, which was two days after the county attorney reported his concerns about Staff's conduct to the sheriff. *Id.*

Interpreting Chapter 614, the Texas Supreme Court held that the "person making the complaint," as used in Section 614.022(2), was not required to be "the victim of the alleged misconduct." *Id.* at 451. The Court then concluded that "the disciplinary process culminating in Staff's removal from his position as a deputy sheriff complied with both the letter and spirit of the law." *Id.* at 454. The deficiency notice signed by Neisner satisfied the requirements of a "signed complaint setting forth the allegations of misconduct" and contained adequate information to serve "the overarching statutory purposes of (1) reducing the risk that adverse employment actions will be based on unsubstantiated complaints and (2) ensuring the affected employee receives sufficient information to enable him to defend against the allegations." *Id.*

With respect to the requirement that the signed complaint be presented to the employee within a reasonable time, the Court noted that Staff received the deficiency notice within two days of the initiation of an internal investigation. *Id.* The Court emphasized the fact that Staff "suffered no disciplinary action until the complaint was in hand," explicitly stating that "there is neither an express nor implied temporal limitation on presentment of a complaint in relation to the imposition of discipline." *Id.* The Court explained that the statute does not require: (1) the complaint to be served before discipline is imposed; or (2) an opportunity to be heard before disciplinary action may be taken. *Id.* "In some situations, presentment of a complaint contemporaneously with the imposition of discipline may not be 'within a reasonable time after the complaint is filed,'" but the Court concluded that was not the case for Staff. *Id.*

The Court also found that although the deficiency notice stated that Staff's termination was "effective immediately," his termination was conditioned on his right to appeal within a time certain. Reiterating that the statute contains "no requirement that the affected employee be offered a pre-termination opportunity to be heard or participate in the investigative process," the Court concluded the appeal process allowed Staff "ample opportunity to marshal any evidence bearing on the matters identified in the Deficiency Notice and to defend himself before [the sheriff]—the head of the law-enforcement agency—'considered' the complaint and

13

upheld the termination decision." *Id.* at 454–55. Accordingly, the sheriff complied with the statute and summary judgment in his favor was proper.[4]

Here, the undisputed facts are as follows:

- On August 22nd, Chief Di Camillo received information from Alvarado detailing Lewis's prior employment with the Missouri City Fire Department and Lewis's failure to include this information on his applications and other documents for the City of Stafford.

- On September 4th, Chief Di Camillo gave Lewis the Complaint Notification, detailing the allegations against him, and a copy of the August 22nd Memorandum from Alvarado.

- Also on September 4th, Chief Di Camillo terminated Lewis's employment and informed him of his right to appeal to Chief Di Camillo by September 11th.

- On September 6th, Lewis filed a written appeal and met with Chief Di Camillo regarding his termination.

- On September 11th, Chief Di Camillo notified Lewis that the original termination decision was sustained and informed Lewis of his right to appeal the termination decision to the city council.

- Lewis did not appeal to the city council.

Lewis's argument is essentially that the 13-day delay between Chief Di Camillo's receipt of the August 22nd Memorandum and that memorandum being provided to Lewis was unreasonable under Section 614.023 because it did

---

[4]  The Court's decision in *Staff* was limited to an interpretation of the requirements of Chapter 614 of the Texas Government Code. *See Colo. Cty. v. Staff*, 510 S.W.3d 435, 451–55 (Tex. 2017). The same is true here. Our decision involves only an analysis of whether appellees complied with the requirements of Chapter 614. We do not consider whether Lewis had or could have pursued any other remedy against appellees as a result of his termination.

not provide him adequate time to investigate or defend against the complaint and allegations against him before he was terminated. Specifically, in his amended petition, Lewis alleged that "[b]y failing to provide a signed, written complaint . . . prior to his termination," appellees deprived him of the "ability to investigate or defend against the complaints made against him." He also alleged that appellees "failed to provide him with a reasonable time to investigate and respond to the alleged complaint" and that he received the complaint "only after the investigation was complete."

But the Texas Supreme Court rejected similar arguments in *Staff*. Here, like in *Staff*, Lewis was provided a copy of the complaint on the same day he was terminated. The Texas Supreme Court explicitly stated in *Staff* that Section 614.023 does not require a complaint to be served before discipline is imposed. 510 S.W.3d at 454. Also here, like in *Staff*, Lewis's termination was conditioned on his right to appeal to both Chief Di Camillo and the City of Stafford City Council. As stated in *Staff*, the statute does not require the employee be given a pre-termination opportunity to be heard. *Id.* Finally, Lewis argues his receipt of the August 22nd Memorandum on the day of his termination was unreasonable because an investigation had already been conducted and termination was recommended by the time he received the complaint. But, per *Staff*, the statute

15

does not require an employee be afforded an opportunity to participate in the investigative process. *Id.*

The "overarching statutory purposes" of Chapter 614's requirements are to (1) reduce the risk that adverse employment actions will be based on unsubstantiated complaints, and (2) ensure the affected employee receives sufficient information to enable him to defend against the allegations. *Id.* Lewis was provided detailed information in both the August 22nd Memorandum and the Complaint Notification to allow him to investigate the allegations against him related to his failure to disclose his prior employment on his City of Stafford applications. He was also afforded ample opportunity to defend himself against these allegations during the appeal process.[5]

The undisputed facts demonstrate that appellees complied with the statutory requirements of Chapter 614 of the Texas Government Code. We therefore hold that Lewis has not demonstrated that appellees acted without legal authority or failed to perform a purely ministerial act sufficient to waive governmental immunity. *See Heinrich*, 284 S.W.3d at 372. The trial court did not err in granting the plea to the jurisdiction.

---

[5]    We note that Lewis was initially given five business days (until September 11th) to appeal to Chief Di Camillo. Lewis was able to present both a written and oral appeal to Chief Di Camillo by September 6th. Lewis was also informed of his right to further appeal to the City of Stafford City Council, but he elected not to do so.

## Conclusion

We affirm the judgment of the trial court.


                                        Amparo Guerra
                                        Justice

Panel consists of Justices Kelly, Guerra, and Farris.